RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0010p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
      *Plaintiff-Appellee,*

      *v.*

UMAR FAROUK ABDULMUTALLAB,
      *Defendant-Appellant.*

No. 12-1207

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:10-cr-20005—Nancy G. Edmunds, District Judge.

Argued: December 5, 2013

Decided and Filed: January 13, 2014

Before: MCKEAGUE and STRANCH, Circuit Judges; COLLIER, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Travis A. Rossman, JEWELL & ROSSMAN LAW OFFICE, PLLC, Barbourville, Kentucky, for Appellant. Jonathan Tukel, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee. **ON BRIEF:** Travis A. Rossman, JEWELL & ROSSMAN LAW OFFICE, PLLC, Barbourville, Kentucky, for Appellant. Jonathan Tukel, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

_____

## OPINION
_____

McKEAGUE, Circuit Judge. Defendant-Appellant Umar Abdulmutallab challenges his life sentence for attempting to detonate an explosive device on Northwest Airlines Flight 253. Abdulmutallab challenges his conviction with the following claims:

---

[*]The Honorable Curtis L. Collier, United States District Judge for the Eastern District of Tennessee, sitting by designation.

(1) the district court erred by ordering him to stand trial and accept a guilty plea despite doubts as to Abdulmutallab's competency; (2) the district court erred by allowing Abdulmutallab to represent himself at trial despite doubts as to his competency; (3) the district court erred by admitting incriminating statements Abdulmutallab made while authorities questioned him without a *Miranda* warning; (4) 18 U.S.C. § 924(c) is unconstitutional because Congress lacked the power to enact the statute under the Commerce Clause; (5) Abdulmutallab's life sentence is cruel and unusual in violation of the Eighth Amendment as well as substantively unreasonable under the Sentencing Guidelines.  We conclude that none of these claims have merit and therefore **AFFIRM** the district court.

## I.

Umar Farouk Abdulmutallab ("Abdulmutallab"), known nationally as the "underwear bomber," attempted to detonate an explosive device in his underwear on Christmas Day in 2009.  Abdulmutallab's chosen path towards radicalization began in August 2009 when he traveled to Yemen for the purpose of becoming involved in a violent jihadist group associated with Al Qaeda, a designated terrorist organization pursuant to 18 U.S.C. § 2339B(a)(1) and 8 U.S.C. § 1189(a).  During his time in Yemen, Abdulmutallab received training at an Al Qaeda camp under the direction of the radical Imam Anwar Awlaki and agreed to carry out a suicide attack by bombing a United States air carrier over the United States.  The bomb given to Abdulmutallab was built into a pair of underwear and Abdulmutallab was assured that the bomb would defy airport security because it contained no metal parts.

On Christmas Day, Abdulmutallab boarded the flight from Amsterdam, Netherlands to Detroit, Michigan to execute his martyrdom mission.  The flight carried 289 passengers.  When the flight was close to landing in Detroit, Abdulmutallab went to the bathroom to prepare to detonate the bomb.  Upon returning to his seat, Abdulmutallab told the passenger in the seat next to him that he was not feeling well, pulled a blanket up to his head, and pushed the button to detonate the bomb.  The result was a single, loud pop, which other passengers described as sounding like a firecracker.

The explosive device did not work as intended, and caused only a large fireball around Abdulmutallab and then a fire coming out of Abdulmutallab's pants, igniting the carpeting, walls, and seat. A number of passengers restrained Abdulmutallab and attempted to put the fire out. As a result of the emergency, the pilot brought Flight 253 into a deep descent, landing approximately four minutes later. Once the plane landed, Abdulmutallab was taken to the University of Michigan Hospital for medical treatment.

The superseding indictment charged Abdulmutallab with eight counts:

(1)     Conspiracy to Commit an Act of Terrorism Transcending National Boundaries in violation of 18 U.S.C. §§ 2332b(a)(1) and 2332b(a)(2).
(2)     Possession of a Firearm/Destructive Device in Furtherance of a Crime of Violence in violation of 18 U.S.C. §§ 924(c)(1)(A), 924(c)(1)(B)(ii), and 924(c)(1)(C)(ii).
(3)     Attempted Murder Within the Special Aircraft Jurisdiction of the United States in violation of 18 U.S.C. § 1113 and 49 U.S.C. § 46506.
(4)     Use and Carrying of a Firearm/Destructive Device During and in Relation to a Crime of Violence in violation of 18 U.S.C. §§ 924(c)(1)(A), 924(c)(1)(B)(ii), and 924(c)(1)(C)(ii).
(5)     Willfully Placing a Destructive Device in, upon, and in Proximity to a Civil Aircraft Which was Used and Operated in Interstate, Overseas and Foreign Air Commerce, which was Likely to Have Endangered the Safety of Such Aircraft in violation of 18 U.S.C. § 32(a)(2).
(6)     Possession of a Firearm/Destructive Device in Furtherance of a Crime of Violence in violation of 18 U.S.C. §§ 924(c)(1)(A), 924(c)(1)(B)(ii), and 924(c)(1)(C)(ii).
(7)     Attempted Use of a Weapon of Mass Destruction in violation of 18 U.S.C. § 2332a(a)(2).
(8)     Willful Attempt to Destroy and Wreck a Civil Aircraft in violation of 18 U.S.C. §§ 32(a)(8) and 32(a)(1).

R. 28, First Superseding Indictment at 1–10, PageID # 86–95.

Abdulmutallab's Initial Appearance occurred on December 26, 2009. At that time, the district court explained to Abdulmutallab his right to counsel. Abdulmutallab stated that he did not have sufficient funds to hire his own counsel and agreed to the appointment of the Federal Public Defender's Office.

Abdulmutallab continued to be represented by the Federal Public Defender's Office until he stated at a pretrial conference on September 13, 2010 that he wanted to represent himself because he believed that any representation appointed by the district court would not be in his best interests. The district court explained that the attorneys representing him were experienced lawyers who had dedicated their careers to defending those accused of wrongdoing. The district court then advised Abdulmutallab of the following:

> THE COURT: Mr. Abdulmutallab, I must advise you that in my opinion you would be far better defended by a trained lawyer than you can be by yourself. I think it is unwise of you to try to represent yourself. You're not familiar with the law, you are not familiar with court procedure, you're not familiar with the rules of evidence, and I would strongly urge you not to try to represent yourself.
>
> Now, in light of the penalty that you might suffer if you are found guilty, and in light of all the difficulties of representing yourself, is it still your desire to go forward and represent yourself without giving another try to having an attorney represent you, just even over the next month or two, to see if perhaps we can appoint an attorney who would have what you believe to be your best interests in mind?
>
> THE DEFENDANT: Yeah, I don't want that, no.
>
> THE COURT: You don't want another attorney?
>
> THE DEFENDANT: No.
>
> THE COURT: Is your decision entirely voluntary on your part?
>
> THE DEFENDANT: Yeah.
>
> THE COURT: All right. I find that the defendant has knowingly and voluntarily waived his right to counsel, and I will permit him to represent himself. However, I am going to appoint standby counsel, which I would always do in the case of trial, but I believe this case demands that we have standby counsel available for you to consult with for any questions that you might have as you prepare to represent yourself at the trial in this matter.

R. 23, 09-13-10 Pretrial Conference at 10–11, PageID # 67–68.

The district court appointed standby counsel, Anthony Chambers ("Chambers"), to assist Abdulmutallab with his defense. A number of pretrial conferences were held

in the course of 2010 and 2011 to ensure that the relationship between Chambers and Abdulmutallab was working. At each pretrial conference, Abdulmutallab confirmed that standby counsel was effectively assisting him with his defense.

On August 5, 2011, Chambers filed a motion to suppress statements given by Abdulmutallab at the University of Michigan Hospital and a motion for a competency hearing under seal. The district court held a hearing on the motion for a competency hearing on August 17, 2011. Chambers' motion stated that he questioned Abdulmutallab's "psychological well-being," as Abdulmutallab had begun exhibiting "spontaneously erratic behavior" which is why he believed that a mental examination was necessary. Chambers clarified that he was asking the district court to simply make a determination of whether a full competency hearing was necessary. The district court then placed Abdulmutallab under oath and the following exchange occurred:

> THE COURT: Okay. You understand—have you gone over the indictment in this case on your own and with standby counsel, Mr. Chambers?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand the counts that are filed against you and the nature of the charges that you're facing in this case?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And you've discussed the charges and the possible penalties with Mr. Chambers?
>
> THE DEFENDANT: Yes.
>
> . . .
>
> THE COURT: I've asked you on prior occasions and will ask you again now, are you satisfied with your relationship with Mr. Chambers and the assistance he's been able to give you in preparing for the trial in this matter?
>
> THE DEFENDANT: Well, certainly it's—it's certainly—I feel it's a more—I have a more decent standby counsel. I wouldn't say that I'm 100 percent satisfied, but I think that's just the way it's going to go.
>
> THE COURT: And are you comfortable that you understand my role in this case and what function I will play as this trial goes forward?

THE DEFENDANT: Yes.

THE COURT: And you're aware of the role being played by the United States—assistant United States attorneys in this case?

THE DEFENDANT: Yes.

THE COURT: All right. Can you tell me in your own words what kind of penalties you are facing if you were to be convicted of all of the counts in this complaint—or indictment rather?

THE DEFENDANT: Life charges.

THE COURT: So you know that if you were to be convicted of the charges in this indictment that there would be a possibility of life in prison?

THE DEFENDANT: Yes.

THE COURT: Is there any matter in which you feel that you have questions that have not been adequately addressed or answered or in which you are confused or puzzled by procedure?

THE DEFENDANT: No.

. . .

THE COURT: All right.  I have to say, Mr. Chambers, that I've had the opportunity to interact with Mr. Abdulmutallab on a number of prior occasions in court, that I've not had any sense that he does not understand the charges against him or that he is not able to assist you with this matter.

I understand that it's stressful for any defendant moving toward a criminal trial in which he faces the kind of penalties that Mr. Abdulmutallab is facing, but I have not had any reason to question his competence to move forward in this case, nor to represent himself.

He—I would have to characterize this as somewhat of a hybrid representation in that he has sought your assistance on a number of matters even though he prefers to represent himself, and I'm comfortable with that, as well.

Let me ask you one additional question, Mr. Abdulmutallab. You understand that Mr. Chambers has asked that you be examined for competency to go forward in this case?

THE DEFENDANT: Yes, I understand that.

THE COURT: And what's your position on that?

THE DEFENDANT: I guess, simply, I believe I'm competent to proceed

by myself and I do not wish to have the examination.

THE COURT: And if I were to order the examination, would you cooperate with it?

THE DEFENDANT: Well, one thing was, as I—as he, Mr. Chambers said when—because when we discussed about the motion is initially my idea was perhaps I would even—that would be a good thing to prove my competency to proceed standby, but then when he put it to me that, you know, the kind of—the reasons why, or the arguments that have to be put forward before even someone has that type of examination, and I said that's counter productive to what I even want, so I don't want the examination.

THE COURT: All right. I'm satisfied that Mr. Abdulmutallab is in fact competent to proceed in this matter, and I have no reason to believe that he is not, and I think that there needs to be more of a showing than was set forth in the motion that was filed in this case to order a competency exam. I'm going to deny the motion without prejudice.

If something arises that makes you feel it important to renew that motion, then by all means please do so.

R. 116, 08-17-11 Motions Hearing Tr. at 11–16, PageID # 758–63.

On September 14, 2011, the district court considered testimony from three witnesses regarding the motion to suppress statements Abdulmutallab made at the University of Michigan Hospital. Abdulmutallab claimed that the statements should be suppressed because he was not given a *Miranda* warning prior to making the statements and because he was under the influence of the pain-relief medication Fentanyl when he was questioned. The district court heard testimony and denied Abdulmutallab's motion to suppress, finding that (1) Abdulmutallab's statements were voluntary, and (2) the circumstances present at the time of Abdulmutallab's questioning fell within the public safety exception to *Miranda* recognized in *New York v. Quarles*, 467 U.S. 649 (1984).

Abdulmutallab's trial began on October 11, 2011 with Abdulmutallab informing the district court that he did not want to contest the charges. However, after a discussion with Chambers, standby counsel announced to the district court that Abdulmutallab would proceed to trial. The Government called its first witness, a passenger on Flight 253 who was sitting near Abdulmutallab and witnessed Abdulmutallab's attempt to detonate the bomb on the flight.

The next day, Chambers indicated to the district court that Abdulmutallab intended to plead guilty. Because the Government had not offered Abdulmutallab a plea agreement, Abdulmutallab pled to the indictment. The district court began the plea colloquy by asking standby counsel whether he believed Abdulmutallab was competent to proceed in this matter, to which standby counsel agreed. Following the lengthy plea colloquy in which Abdulmutallab was informed of the rights he was waiving and the nature of the plea he was entering, the district court found that Abdulmutallab was competent and capable of entering the plea and accepted his plea.

The district court sentenced Abdulmutallab to 240 months of imprisonment on Counts 3, 5, and 8, to be served concurrently; imprisonment for life on Count 7 to run concurrently with the other three counts; imprisonment for life on Count 1 to run consecutively to all other counts; 30 years of imprisonment on Count 2 to run consecutively to all other counts; imprisonment for life on Count 4 to run consecutively to all other counts; and imprisonment for life on Count 6 to run consecutively to all other counts. The sentence was the maximum penalty permitted on each of the eight counts. This appeal followed.

## II.

### A.     Competency to Enter Guilty Plea

Abdulmutallab argues that the district court erred in not conducting a competency hearing prior to accepting his guilty plea. Abdulmutallab contends that the district court should have ordered a competency examination when standby counsel filed a motion which raised a doubt as to his competency. The Government responds by stating that the district court did not abuse its discretion, as the district court had no reason to question Abdulmutallab's competency to stand trial, as neither Abdulmutallab's behavior in court nor standby counsel's motion for a competency hearing raised suspicions as to Abdulmutallab's competency.

A criminal defendant may not plead guilty unless he does so competently and intelligently. *Godinez v. Moran*, 509 U.S. 389, 396 (1993). A criminal defendant's due-process right to a fair trial is violated by a court's failure to hold a proper competency

hearing where there is substantial evidence of a defendant's incompetency. *Pate v. Robinson*, 383 U.S. 375, 385–86 (1966).

The test for competency[1] to stand trial is whether the defendant has (1) sufficient present ability to consult with a lawyer with a reasonable degree of rational understanding, and (2) a rational and factual understanding of the proceedings against him. *Dusky v. United States*, 362 U.S. 402 (1960) (per curiam); *Godinez v. Moran*, 509 U.S. at 399 (stating that the *Dusky* standard applies to defendants who plead guilty).

On appeal, we review under an abuse of discretion standard a district court's determination whether there is "reasonable cause" to believe that a defendant is incompetent and whether to hold a competency hearing. *United States v. Jones*, 495 F.3d 274, 277 (6th Cir. 2007) (citation omitted). In order for a court to determine whether a competency hearing was required, the court should consider "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial . . . ." *Drope v. Missouri*, 420 U.S. 162, 180 (1975). No one factor is determinative of whether further inquiry into a defendant's competency is warranted, "but . . . even one of these factors standing alone, may, in some circumstances," be sufficient to warrant further inquiry. *Id.*

We find that the district court did not err in not holding a competency hearing prior to allowing Abdulmutallab to proceed to trial and ultimately enter a guilty plea. To begin, this is not a case where the defendant's behavior in the courtroom raised the district court's suspicions of incompetency. The defendants in *Drope* and *Pate* exhibited

---

[1]The standards for competency to stand trial are codified in 18 U.S.C. § 4241, which provides:

(a) **Motion to determine competency of defendant**.—At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, or at any time after the commencement of probation or supervised release and prior to the completion of the sentence, the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.
(b) **Psychiatric or psychological examination and report**.—Prior to the date of the hearing, the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court, pursuant to the provisions of section 4247(b) and (c).

behavior both in the courtroom and outside the courtroom which would make a reasonable judge question their competency to stand trial. *See Drope*, 420 U.S. at 180;[2] *Pate*, 383 U.S. at 385.[3]  In stark contrast to the defendants in *Drope* and *Pate*, Abdulmutallab did not exhibit irrational behavior in the courtroom that raised suspicions as to his competency. Rather, Abdulmutallab was an active participant in the proceedings, filing and arguing motions, and assisting Chambers in preparing his defense. Abdulmutallab directly and articulately addressed the district judge on multiple occasions and demonstrated his ability to make comprehensible legal arguments and his clear understanding of the nature of the proceedings. *Godinez*, 509 U.S. at 399 (stating the one factor to determine whether a defendant is competent is whether he can make comprehensible legal arguments).[4]  Abdulmutallab is not a defendant who had a long

---

[2]In *Drope*, the defendant's counsel filed a motion for a continuance so the defendant could see a psychiatrist and receive treatment. *Drope*, 420 U.S. at 164. Attached to the motion was a psychiatrist's report. *Id.* The trial judge dismissed the motion because it was not filed in the proper form. *Id.* at 165. During the trial, the defendant's wife testified against him and stated her belief that her husband needed psychiatric care and that the day before the trial, the defendant tried to choke and kill her. *Id.* at 166. The defendant later attempted suicide during trial to avoid prosecution. *Id.* at 166–67. The Supreme Court held that the trial court failed "to give proper weight to the information suggesting incompetence which came to light during trial." *Id.* at 179. The Court stated that the defendant's attempted murder of his wife and attempted suicide "hardly could be regarded as rational conduct" and "created a sufficient doubt of his competence to stand trial." *Id.* at 179–80.

[3]In *Pate*, the defendant's counsel admitted that the defendant had murdered his second wife, but counsel alleged that the defendant was insane at the time of the murder. *Pate*, 383 U.S. at 376. The defense introduced the uncontradicted testimony of four witnesses who showed that the defendant had a long history of disturbed behavior. *Id.* at 378. The defendant had several erratic episodes: he believed someone was trying to shoot him or come after him; he heard voices; and he threw all of his first wife's clothes in the yard after she had fled the house due to his erratic behavior. *Id.* at 378–81. The defendant was also previously hospitalized in a psychiatric facility and had served a four-year prison sentence for the murder of his infant son. *Id.* at 381. Immediately after murdering his son, the defendant also attempted suicide several times. *Id.* The Supreme Court held that in light of the defense testimony and the defense counsel's insistence throughout the proceedings that his client's sanity was an issue, the defendant was entitled to a competency hearing. *Id.* at 384–85. Depriving him of this hearing was a violation of his constitutional right to a fair trial. *Id.* at 385. The Court noted that "it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently waive his right to have the court determine his capacity to stand trial." *Id.* at 384 (internal quotation marks and citation omitted). The Court also recognized that while a defendant's "demeanor at trial might be relevant to the ultimate decision as to his sanity, it cannot be relied upon to dispense with a hearing on that very issue." *Id.* at 386.

[4]An example of this understanding is at a motions hearing before trial when Abdulmutallab responded to a Government motion seeking to preclude his reliance on a duress defense. The following exchange occurred:

> THE COURT: Now, we have quite a few motions, some of which do not seem to be contested, but some obviously are. The first is the Government's motion to preclude expert testimony on the defendant's mental condition and to preclude the defense of duress. I don't think that's a contested issue, is it, Mr. Chambers?

> MR. CHAMBERS: I believe that Mr. Abdulmutallab is going to address these motions, all of them, is my understanding.

history of psychological problems but rather exhibited an ability to adequately conduct his defense. *But see Drope*, 420 U.S. at 169; *Pate*, 383 U.S. at 378; *Indiana v. Edwards*, 554 U.S. 164, 169 (2008) (identifying a defendant's significant history of mental illness as the common denominator in Supreme Court cases where the Court found error for failing to hold a competency hearing).

Furthermore, Chambers' motion requesting a competency hearing contained scant allegations of behavior that would cause a court to question Abdulmutallab's competency. Chambers stated that Abdulmutallab had begun exhibiting "spontaneously erratic behavior," namely that he would be "engaged and cooperative then minutes later the Defendant will become disengaged, irrational, and uncooperative." R. 60, Mot. Requesting Competency Examination, Sealed Dist. Ct. Docs. at 2. At times, Abdulmutallab worried about "mounting a defense" and then later within the same meeting would indicate that he had no desire to prepare a defense. *Id.* Chambers stated that Abdulmutallab's behavior had risen to "unprecedented levels," but provided no suggestion as to what "level" he was referring. Chambers motion did not provide sufficient factual details that would cause the district court to question Abdulmutallab's competency. Furthermore, Abdulmutallab's apparent waiver between desiring to mount a defense and pleading guilty is not indicative of incompetence, but is indicative of the complicated decision of trial strategy of a defendant proceeding *pro se*.

---

THE COURT: All of them. All right. Mr. Abdulmutallab.

THE DEFENDANT: Yeah, with regards to that motion, I do not intend to use those defenses, but I also feel it's not for the Government to say what I can and can't do during trial.

THE COURT: No, it's for me to say what you can and can't do during trial, but the Government needs to be able to, and they are able to, raise these issues ahead of time so that we don't have mistrial, we don't have things presented in front of the jury that are inappropriate. So if you're telling me now that you do not intend to raise the defense of duress or your mental condition at the time as a defense, then I'll grant the Government's motion and I will instruct you that you are not to raise those issues in front of the jury. If something comes up, you need to bring it to my attention before anything happens with the jury in the courtroom.

THE DEFENDANT: Yeah, understood.

R. 148, 09-27-11 Mot. Hearing Tr. at 52–53, PageID # 1976–77.

The facts before the court show that Abdulmutallab is an educated and adept individual. *See* R. 114, 10-12-11 Guilty Plea Tr. at 8, PageID # 677. In order for Abdulmutallab to accomplish his goal of blowing up an aircraft over United States soil, Abdulmutallab had to make numerous calculated decisions. A brief overview of the steps that Abdulmutallab took in preparation for his mission is instructive:

- Abdulmutallab studied the teachings of the radical Imam Anwar Awlaki, which prompted his decision to travel to Yemen for the purpose of meeting Awlaki.
- While in Yemen, Abdulmutallab agreed to carry out the martyrdom mission.
- In order to conceal his time in Yemen, Abdulmutallab decided to travel to Ghana before departing to Amsterdam.
- Abdulmutallab had to come up with clever reasons for traveling to the United States when an airport screener in Amsterdam questioned his reasons for travel.

These actions show the deliberate, conscious, and complicated path Abdulmutallab chose to pursue in the name of martyrdom. Unlike the defendants in *Pate* and *Drope*, Abdulmutallab not only acted rationally, but was (nearly) able to execute a complex martyrdom mission. The complexity behind Abdulmutallab's mission indicates the exact opposite of incompetence.

Although Abdulmutallab raised some uncognizable arguments (for example that the United States had no jurisdiction to prosecute him because he is a Muslim),[5] this

---

[5] Abdulmutallab makes much of the fact that when the district court asked him questions on his position regarding a competency hearing, he stated both that he believed that he was competent, but also expressed that he thought it would be a good idea to "prove" his competency. R. 116, 08-17-11 Motions Hearing Tr. at 15–16, PageID # 762–63. When asked by the trial court whether he would comply with a competency hearing, Abdulmutallab responded by saying:

> THE DEFENDANT: Well, one thing was, as I—as he, Mr. Chambers said when—because when we discussed about the motion is initially my idea was perhaps I would even—that would be a good thing to prove my competency to proceed standby, but then when he put it to me that, you know, the kind of—the reasons why, or the arguments that have to be put forward before even someone has that type of examination, and I said that's counter productive to what I even want, so I don't want the examination.

*Id.*

To the contrary, Abdulmutallab's statements to the court do not constitute "rambling" but rather constitute a coherent statement regarding his attitude toward a competency hearing. As the Government states, Abdulmutallab was explaining that at first he was willing to have the examination because he wanted to demonstrate the ability to represent himself, but when he understood the threshold for ordering

behavior alone does not indicate that the district court abused its discretion regarding Abdulmutallab's competency.[6]Accordingly, the district court did not err in not holding a competency hearing. *Jones*, 495 F.3d at 277.

**B.    Competency to Proceed *Pro Se***

Abdulmutallab asserts the same facts mentioned above to claim that the district court should have questioned his competency to proceed *pro se*. *See supra*, II.A. The Government rebuts this contention, noting that while Abdulmutallab waived his right to counsel, he had the assistance of standby counsel at all times and was therefore "represented" throughout the proceedings.

The Sixth Amendment guarantees criminal defendants the right to counsel. U.S. Const. Amend. VI. It is undisputed that criminal defendants also have a constitutional right to waive the right to counsel and choose self-representation, even when a court believes that self-representation is not advisable. *Faretta v. California*, 422 U.S. 806, 807 (1975). Any waiver of the right to counsel must be knowingly, voluntarily, and intelligently made. *Iowa v. Tovar*, 541 U.S. 77, 87–88 (2004). When there is reason for a court to doubt a defendant's competency, a court should "make a competency determination before finding the waiver [of the right to counsel] to be valid." *United States v. Ross*, 703 F.3d 856, 867 (6th Cir. 2012) (internal quotation marks omitted). This court reviews under an abuse of discretion standard the question of whether there was reasonable cause to question a defendant's competence before the district court accepted waiver of counsel. *Id.*

---

a competency examination, he concluded that such a course of action would be counterproductive. Accordingly, we hold that Abdulmutallab's statement regarding his position on whether a competency exam was necessary does not support a finding of doubt as to Abdulmutallab's competency.

[6]Abdulmutallab argues in his reply brief that other actions indicated that he was not competent to stand trial. Abdulmutallab argues that his demeanor at trial was not "normal and respectful," and cites a portion of the sentencing hearing where he shouted "Allahu Akbar" or "God is great" a few times. R. 139, 02-16-12 Sent. Tr. at 40, PageID # 1244. However, as other courts have had defendants who shout religious incantations in court and found them to be competent, we hold that Abdulmutallab's shouting "Allahu Akbar" signifies only his religious beliefs and is not indicative of his incompetence. *See, e.g., United States v. Mitchell*, 706 F. Supp. 2d 1148, 1195 (D. Utah 2010) (district court who handled the habeas petition of Elizabeth Smart's kidnapper found that he was competent to stand trial despite the fact that he sang religious hymns in the courtroom).

We hold that the district court did not err in refusing to conduct a competency hearing prior to allowing Abdulmutallab to proceed *pro se*. As detailed above, neither Abdulmutallab's behavior in the courtroom nor standby counsel's motion for a competency examination raised sufficient doubt as to Abdulmutallab's competency. *See supra* II.A. There was simply no cause to question Abdulmutallab's competence at the time he waived his right to counsel and asked the district court to allow him to represent himself. Abdulmutallab was represented by the Federal Public Defender's Office from December 26, 2009 until September 13, 2010, when he asserted his right to represent himself. None of the lawyers who had been representing Abdulmutallab for the nine months preceding his request to proceed *pro se* expressed any doubt about his competence. It was not until August 5, 2011, when Chambers filed his motion requesting a competency hearing, that Abdulmutallab's competency was put into question.

Abdulmutallab may have waived his right to counsel, but he did not prepare his defense alone. The district court insisted that Abdulmutallab be represented by standby counsel for the entire proceeding. Standby counsel actually undertook a majority of the representation, as evidenced by the fact that he wrote and filed most motions, examined all witnesses at the suppression hearing, and questioned all but one of the prospective jurors. Thus, while Abdulmutallab proceeded *pro se*, he was represented by legal counsel throughout the proceedings.[7] *See United States v. Ross*, 703 F.3d 856, 871–73 (6th Cir. 2012) (finding that if standby counsel provided "meaningful adversarial testing" then defendant was not deprived of counsel).

Ultimately, the district court observed Abdulmutallab's behavior throughout the proceedings and did not find that his behavior brought his competency into question. R.

---

[7]Abdulmutallab argues that the district court should have inquired about his competency when he chose to represent himself in a case where he was facing a mandatory life sentence even though he had never studied law, and had essentially no legal knowledge. However, this argument fails. In *United States v. Back*, this court addressed "defendant's contention that seeking to proceed *pro se*, especially when confronted with serious charges, inherently raises the question of competency. As the Supreme Court has made clear, while a criminal defendant who proceeds *pro se* may, like any other *pro se* litigant, have a fool for a client, that does not mean that he or she is presumptively incompetent[.]" 307 F. App'x 876, 879 (6th Cir. 2008) (citing *Godinez*, 509 U.S. at 401 n.13). "While defendant's decision may have been ill-advised, the district court did enough to ascertain that defendant was capable of understanding the consequences of his course of action." *Id.*

116, 08-17-11 Mot. Tr. at 14, PageID # 761  ("I have to say, Mr. Chambers, that I've had the opportunity to interact with Mr. Abdulmutallab on a number of prior occasions in district court, that I've not had any sense that he does not understand the charges against him or that he is not able to assist you with this matter.").  The district court even stated that it recognized the pressures on Abdulmutallab as the case came closer to trial.  *Id.* ("I understand that it's stressful for any defendant moving toward a criminal trial in which he faces the kind of penalties that Mr. Abdulmutallab is facing, but I have not had any reason to question his competence to move forward in this case, nor to represent himself.").  Ultimately, the district court oversaw the progression of the case and observed Abdulmutallab on numerous occasions, and yet found no reasonable basis on which to order a competency hearing.

There is simply no evidence to suggest that the district court should have questioned Abdulmutallab's understanding of the consequences of his course of action. The district court did not err in not ordering a competency exam prior to allowing Abdulmutallab to waive his right to counsel.

## C.      Suppression of Statements from University of Michigan Hospital

Abdulmutallab argues that the district court erred in failing to suppress the statements he made during his time at the University of Michigan Hospital. Abdulmutallab states that his testimony at the hospital was compelled and therefore the Fifth Amendment prohibited the use of that testimony in trial.

We will not address the merits of Abdulmutallab's argument, as he waived any right to challenge the suppression of his statements when he entered the guilty plea. When a criminal defendant pleads guilty, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards [for effective assistance of counsel]." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  This court has held that a defendant who pleaded guilty may not appeal an adverse ruling on a pre-plea motion to suppress evidence "unless he has preserved the

right to do so by entering a conditional plea of guilty in compliance with Rule 11(a)(2)."[8] *United States v. Bell*, 350 F.3d 534, 535 (6th Cir. 2003) (citation and internal quotations omitted).

The facts are quite clear: Abdulmutallab pled guilty without a plea agreement, and without preserving his right to appeal the ruling on his suppression motion under Rule 11(a)(2). He did not seek the consent of the district court or the Government to preserve his right to appeal the ruling on his suppression motion. Accordingly, pursuant to *Tollett v. Henderson* and *United States v. Bell*, Abdulmutallab waived his right to raise this issue.

## D.     Constitutionality of 18 U.S.C. § 924(c)

Abdulmutallab argues that his convictions on Counts Two, Four, and Six must be reversed because, as applied to the facts of this case, Congress lacked authority under the Commerce Clause to enact 18 U.S.C. § 924(c). Abdulmutallab argues that the statute is unconstitutional, because there is no requirement that the "use and carrying," "possession," or "crime of violence" be connected in any way to interstate commerce.

This court reviews challenges to a claim that Congress exceeded its constitutional power in enacting a statute *de novo*. *United States v. Rose*, 522 F.3d 710, 716–17 (6th Cir. 2008). An as-applied challenge consists of a challenge to the statute's application with respect to the party before the court. *Amelkin v. McClure*, 205 F.3d 293, 296 (6th Cir. 2000). At issue in this case is Section 924(c), which regulates activity involving the "use and carrying" and "possession" of a "destructive device" in connection with a "crime of violence." The "crime of violence" must be one "for which the person may be prosecuted in a court of the United States." 18 U.S.C. § 924(c)(1)(A).

---

[8]Federal Rule of Criminal Procedure 11(a)(2) (2012) provides:

> With the consent of the court and the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion. A defendant who prevails on appeal may then withdraw the plea.

Title 18 U.S.C. § 924(c)[9] is constitutional as-applied to the facts of this case. The Sixth Circuit dealt with an as-applied Commerce Clause challenge in *United States v. Ricketts*, 317 F.3d 540 (6th Cir. 2003). In *Ricketts*, this Court held that analysis of whether § 924(c) is a proper exercise of congressional power under the Commerce Clause must not focus on § 924(c) as a "free standing statute[]," but rather must focus on the underlying crime that § 924(c) punishes. *Id.* at 543. In *Ricketts*, the underlying crime was a "drug conspiracy [which] d[id] substantially affect interstate commerce." *Id.* This Court upheld the conviction on the basis that § 924(c) was constitutional based on the underlying crime, a drug conspiracy, which was properly within Congress's power to regulate. Accordingly, the test for whether 924(c) is constitutional is whether the underlying crime substantially affects interstate commerce. 18 U.S.C. § 924(c).

All of Abdulmutallab's 18 U.S.C. § 924(c)'s charges substantially affect interstate commerce. Count Two, the first § 924(c) charge, was tied to Count One, which charged conspiracy to commit an act of terrorism transcending national boundaries, in violation of 18 U.S.C. §§ 2332b(a)(1) and 2332b(a)(2). 18 U.S.C. §§ 2332b(a)(1) includes the element of *use of a facility of interstate or foreign commerce*. The Supreme Court has made clear that statutes are valid where they regulate the instrumentalities of commerce, in this case, protecting civil aircraft of the United States. *See Perez v. United States,* 402 U.S. 146, 150 (1971).

Count Four, the second § 924(c) charge, was tied to Count Three, which charged attempted murder within the special aircraft jurisdiction of the United States, in violation of 18 U.S.C. § 1113 and 49 U.S.C. § 46506. Sections 1113 and 46506 involve a *civil aircraft of the United States*. The Supreme Court has upheld the regulation of vehicles used in interstate commerce, as well as the regulation of instrumentalities and channels of interstate commerce. *See Southern R. Co. v. United States*, 222 U.S. 20, 26–27 (1911); *see also United States v. Lopez*, 514 U.S. 549, 558 (1995).

---

[9]Section 924(c) is a penalty provision, requiring enhanced punishment for offenses involving firearms and destructive devices in furtherance of a crime of violence. Section 924(c) therefore must be tied to a crime of violence, in order for the enhanced punishments to take effect. In this case, there are three charges tied to 18 U.S.C. § 924(c).

Count Six, the final charge under § 924(c), was tied to Count Five, which charged willfully placing a destructive device upon and in proximity to a civil aircraft which was used and operated in interstate, overseas, and foreign air commerce, in violation of 18 U.S.C. § 32(a)(2). Section 32(a)(2) also involves a *civil aircraft of the United States*. The Supreme Court in *Perez v. United States*, explicitly mentioned this statute as falling within Congress's Commerce Clause authority. 402 U.S. at 150 ("The Commerce Clause reaches, in the main, three categories of problems  . . . . Second, protection of the instrumentalities of interstate commerce, as for example, the destruction of an aircraft (18 U.S.C. § 32), or persons or things in commerce.").

All of the underlying offenses for which Abdulmutallab was convicted are constitutional under the Commerce Clause. Accordingly, we conclude that all three charges under 18 U.S.C. § 924(c) were constitutionally enacted by Congress.

**E.     Constitutionality of Abdulmutallab's Life Sentence Under the Eighth Amendment**

Abdulmutallab argues that the "evolving standards of decency" prohibit the imposition of four sentences of life imprisonment where no one (other than himself) was physically injured and where most passengers believed that the detonation was the result of firecrackers. The Government responds by citing the simple fact that Abdulmutallab attempted to blow up an airplane with 289 passengers on behalf of Al Qaeda.

The Eighth Amendment to the United States Constitution states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. Amend. VIII. An Eighth Amendment challenge to a sentence is a question of law, reviewed *de novo. United States v. Jones*, 569 F.3d 569, 573 (6th Cir. 2009). A court, when reviewing a sentence, must give "substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as the discretion that trial courts possess in sentencing convicted criminals." *Solem v. Helm*, 463 U.S. 277, 290 (1983). The Supreme Court has identified three factors to consider whether a sentence was so grossly disproportionate that it violated the Eighth Amendment: (1) "the gravity of the

offense and the harshness of the penalty"; (2) "the sentences imposed on other criminals in the same jurisdiction"; and (3) "the sentences imposed for commission of the same crime in other jurisdictions." *Id.* at 292. However, a court does not need to reach the second and third factors in all cases, that analysis is "appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Harmelin v. Michigan*, 501 U.S. 957, 1005 (1991) (Kennedy, J., concurring). When evaluating the gravity of the offense, a court may consider the "harm caused or threatened to the victim or society, and the culpability of the offender." *Solem*, 463 U.S. at 292.

In *Harmelin v. Michigan*, 501 U.S. at 996–1009, Justice Kennedy, in a concurrence, articulated a "narrow proportionality principle." The Sixth Circuit has adopted this principle. *Jones*, 569 F.3d at 573. Under this approach, "there is no requirement of strict proportionality; the eighth amendment is offended only by an extreme disparity between crime and sentence." *Id.* (internal quotations and citations omitted).

Abdulmutallab's sentence does not constitute "cruel and unusual" punishment in violation of the Eighth Amendment. The indictment charged three violations of 18 U.S.C. § 924(c): Counts Two, Four, and Six. Because of the statutory framework, Counts Four and Six carried mandatory sentences for life imprisonment. *See* 18 U.S.C. § 924(c)(1)(C)(ii) ("In the case of a second . . . conviction under this subsection, the person shall—if the firearm involved is a . . . destructive device . . . be sentenced to imprisonment for life."). Count One (conspiracy to commit an act of terrorism transcending national boundaries) and Count Seven (attempted use of a weapon of mass destruction) each was punishable by a maximum sentence of life imprisonment, which the district court, in its discretion, imposed. On appeal, Abdulmutallab challenges both the mandatory and discretionary sentences as being "cruel and unusual" within the meaning of the Eighth Amendment.

The facts of this case are not ones in which comparison of the penalty of the crime to the punishment raises a question that the punishment is "grossly

disproportionate." As the district court stated on the record at Abdulmutallab's sentencing:

> [T]he nature and circumstances of the offenses are not in dispute. Defendant attempted to blow up an airplane with 289 people on board and he failed to accomplish this objective only because of a technical problem with the bomb. Defendant, by his own statements, was deeply committed to his mission, seeking out and finding al Qaeda and Anwar Al-Awlaki, volunteering for a martyrdom mission and then becoming involved in planning and training for a significant amount of time.

R. 139, 02-16-12 Sent. Tr. at 51–52, PageID # 1255–56.

The district court also found Abdulmutallab to be a threat to society. *Id.* at 54, PageID # 1258.

> Thus, by his own words, defendant has shown that he continues to desire to harm the United States and its citizens, and that he views it as his religious obligation to do so. I believe that the defendant has stated and it is clear that he has enormous motivation to carry out another terrorist attack but that he lacks the capability of doing that because of his incarceration. This Court has no ability to control the defendant's motivation, which does appear to be unchanged. However, I can control defendant's opportunity to act on those intentions [by imposing life sentence].

*Id.* at 54–55, PageID # 1258–59.

The "evolving standards of decency" do not require a lesser sentence. The district court's conclusions were correct. The discretionary life sentences (Counts One and Seven) are constitutional, as they are fully proportional with the crimes, especially in light of the fact of Abdulmutallab's desire to engage in future terrorist activity. Furthermore, this court has held that an Eighth Amendment challenge must fail if a defendant receives a sentence within the guideline range, when the guideline range contemplates the gravity of the offense, which is what the district court imposed in this case. *United States v. Herrick*, 512 F. App'x 534, 538–39 (6th Cir. 2013). The mandatory life sentences (Counts Four and Six) are also constitutional. The analysis in

*Harmelin*[10] controls. *Harmelin*, 501 U.S. at 996–1009 (1991). Abdulmutallab attempted to detonate a bomb on a plane with 289 passengers. He may have been the only person harmed, but that is only because his bomb failed to properly work. These facts, and the fact that Abdulmutallab's sentence was within the guideline range and proportional, inform this Court that his sentence is not "cruel and unusual" punishment.

**F.    Substantive Reasonableness of the Sentence under the Sentencing Guidelines**

Abdulmutallab argues that his life sentence is substantively unreasonable in light of the nature and circumstances of his offense, namely that his offense resulted in no physical harm to anyone other than himself and that a sentence of life imprisonment for a young man in his early twenties is a harsh punishment for someone with no criminal history. Considering the fact that Abdulmutallab committed an act of terrorism, the Government argues that the district court properly considered the factors in 18 U.S.C. § 3553(a)(1).

This court reviews criminal sentences for both procedural and substantive reasonableness. *Gall v. United States*, 552 U.S. 38, 51 (2007). Sentences are reviewed under the deferential abuse of discretion standard. *Id.* When the sentence is within the range suggested by the Sentencing Guidelines, this court may apply a rebuttable presumption of substantive reasonableness. *United States v. Anderson*, 695 F.3d 390, 402 (6th Cir. 2012).

A sentence is substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, or gives an unreasonable amount of weight to any pertinent factor. *United States v. Cochrane*, 702 F.3d 334, 345 (6th Cir. 2012) (internal quotations and citation omitted). Review for substantive reasonableness focuses on whether a sentence is adequate, but not "greater than necessary" to accomplish the sentencing goals identified by Congress in 18 U.S.C. 3553(a). *Id.* (internal quotations and citation omitted). The substantive reasonableness

---

[10]*Harmelin* involved a mandatory life sentence for possession of 650 grams of cocaine. *Harmelin*, 501 U.S. at 957.

inquiry "take[s] into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id.* (internal quotations and citation omitted). However, a statutorily required sentence is presumptively reasonable. *United States v. Penney*, 576 F.3d 297, 317 (6th Cir. 2009).

We conclude that Abdulmutallab's sentence is substantively reasonable under the Sentencing Guidelines. As the sentencing transcript makes clear, the district court considered all of the factors set forth in 18 U.S.C. 3553(a). The district court properly considered the nature and circumstances of the offense, the need for the sentence to reflect the seriousness of the offense, and the need to protect the public from further crimes. After weighing all of these factors, particularly the fact that Abdulmutallab committed an act of terrorism and communicated a desire to partake in future acts of terrorism should he not be imprisoned, the district court properly imposed life sentences. Abdulmutallab has not rebutted the presumption of substantive reasonableness by showing that the district court improperly weighed the factors set forth in 18 U.S.C. § 3553(a).

### III.

For the reasons set forth above, we **AFFIRM** the district court's rulings.