NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0011n.06

No. 21-3746

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jan 05, 2023
DEBORAH S. HUNT, Clerk

)
UNITED STATES OF AMERICA,            )
    Plaintiff-Appellee,              )     ON APPEAL FROM THE
)     UNITED STATES DISTRICT
)     COURT FOR THE SOUTHERN
v.                                   )     DISTRICT OF OHIO
)
CRAWFORD P. BOGLE,                   )
)                    OPINION
    Defendant-Appellant.             )
)

---

Before: KETHLEDGE, WHITE, BUSH, Circuit Judges.

JOHN K. BUSH, Circuit Judge. Crawford Bogle pleaded guilty to knowing and intentional possession with intent to distribute 40 grams or more of a mixture or substance containing a detectable amount of fentanyl. Pursuant to his plea agreement, the district court sentenced him to 216 months imprisonment followed by 10 years of supervised release. On appeal, Bogle challenges the district court's denial of two motions to suppress evidence that he believes the government obtained in violation of the Fourth Amendment. Because Bogle waived his right to appeal these denied motions, we AFFIRM.

**I.**

In 2019, Bogle purchased, possessed, and distributed fentanyl, methamphetamine, and cocaine in southern Ohio. This drug operation involved more than 40 grams of a mixture or substance containing fentanyl and more than 500 grams of a mixture or substance containing a detectable amount of methamphetamine. Using stash houses—including homes at 21 Valley View

Apartment A, 251 Marathon Avenue, 4492 Riverside, 4624 Laurel, and 22 Siebenthaler—Bogle stored, processed, and then sold the drugs he obtained.

Those drug sales netted him thousands of dollars in cash. To pay for the drugs he sold, Bogle delivered money to couriers who worked for his drug supply source. In an effort to protect himself and his drug operation, Bogle kept a Glock firearm at the Valley View Apartment A stash house. There, at one point, he had over 800 grams of methamphetamine and 300 grams of fentanyl along with the Glock handgun.

But Bogle's drug business eventually came to an end thanks to an undercover agent from the Drug Enforcement Administration (DEA). That agent posed as a courier from Bogle's drug supply source to intercept one of his payments. The DEA then followed up with several investigative techniques to detect and thwart Bogle's drug operation, including: placing a court-approved tracking device on Bogle's truck; executing search warrants at the various stash houses; and using a Title III cellular telephone intercept (wiretap). From these efforts, the DEA identified more than a dozen people involved with this drug operation.

When the investigation concluded, a grand jury indicted Bogle, as well as eighteen other people, for various drug crimes. Bogle then filed a motion to suppress evidence obtained from the wiretap of his cell phone, arguing that the wiretap was unnecessary. He later amended this motion to also challenge the probable cause supporting the installation of the tracking device on his truck and the probable cause for the search warrants for the Riverside, Laurel, and Siebenthaler residences. He filed a second motion to suppress evidence obtained from the search of the Valley View Apartment A residence, challenging the particularity and scope of that warrant. The district court denied both motions.

Bogle then decided to enter a guilty plea, with a negotiated plea agreement, to Count 9 of the indictment—the knowing and intentional possession with intent to distribute 40 grams or more of a mixture or substance containing a detectable amount of fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). As part of the change of plea hearing, the district court asked Bogle if he understood his guilty plea waived his ability to appeal the earlier suppression rulings. The district court specifically asked Bogle if he understood that he was "giving up [his] right to appeal anything that has occurred in [his] case before [he] came to court" to enter his guilty plea. The district court also clarified that the scope of the appeal waiver "would include [the court's] opinion on the motion to suppress." In response, Bogle replied, "Yes, your Honor."

Notably for this appeal, the plea agreement is silent about Bogle's ability to appeal the challenges related to the district court's denial of the motions to suppress. Because of this omission, the government characterizes the plea as unconditional, given that it lacks any reference to Federal Rule of Criminal Procedure 11(a)(2). That rule states that a conditional plea reserves, in writing, the right to appeal an adverse determination of a specified pretrial motion. In response, Bogle contends that the district court confused the issue because there was no appeal waiver provision in his plea agreement, and the district court cannot orally add to the plea agreement during the plea colloquy.

The district court ultimately accepted the guilty plea, finding that Bogle entered it knowingly, intelligently, and voluntarily. As a result of his plea, the district court sentenced Bogle to 216 months of imprisonment, pursuant to his plea agreement, followed by 10 years of supervised release. Bogle timely appealed.

**II.**

As explained below, we need not reach the merits of Bogle's arguments about the suppression motions because he did not preserve any right to appeal the district court's rulings. We reach this decision based on our de novo review of whether the defendant's plea agreement waived his right to appeal. *See United States v. Swanberg*, 370 F.3d 622, 626 (6th Cir. 2004) (citing *United States v. Smith*, 344 F.3d 479, 483 (6th Cir. 2003)).

Bogle would have us interpret the lack of an appeal waiver in the plea agreement in favor of allowing his appeal. But Bogle's position contradicts binding circuit precedent. In *United States v. Abdulmutallab*, we held that a defendant waived his ability to appeal the ruling of a suppression motion when pleading guilty. 739 F.3d 891, 904 (6th Cir. 2014). Like Bogle's plea agreement, Abdulmutallab's plea contained no provision addressing an appeal waiver. Nonetheless, we held that the guilty plea necessarily implied such a waiver. To reach our holding, we explained that "[w]hen a criminal defendant pleads guilty, 'he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.'" *Id.* at 904 (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)). The import of this reasoning, applied here, is that Bogle cannot appeal the alleged deprivation of his constitutional rights during the government's investigation. He may only attack the voluntary and intelligent character of the guilty plea, *id.*, an argument not raised by Bogle in this appeal. *Id.*

The Supreme Court has explained that a "valid guilty plea also renders irrelevant—and thereby prevents the defendant from appealing—the constitutionality of case-related government conduct that takes place before the plea is entered." *Class v. United States*, 138 S.Ct. 798, 805 (2018). As the Court stated in *Tollett v. Henderson*, the entry of "a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant

has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." 411 U.S. 258, 267 (1973). Because Bogle's suppression rulings only challenge the government's conduct before the guilty plea, his guilty plea prevents his appeal related to that conduct. Given that Bogle's suppression motions are based on the Fourth Amendment, the Supreme Court's decision in *Haring v. Prosise* is particularly relevant. In that case the Court explained that "a guilty plea results in the defendant's loss of any meaningful opportunity he might otherwise have had to challenge the admissibility of evidence obtained in violation of the Fourth Amendment." 462 U.S. 306, 320 (1983). Thus, Bogle's suppression motions can no longer be granted because, by pleading guilty, he forfeited his Fourth Amendment grounds to appeal the admissibility of the evidence.

Even more, the *Class* opinion explains that a plea agreement that lacks an appeal waiver still bars the appeal of most constitutional claims. 138 S.Ct. at 806–07. Like the district court's plea colloquy with Bogle, the district court told Class that he was "giving up [his] right to appeal [his] conviction." *Id.* at 807. The only constitutional claims preserved for appeal following this exchange with the district court are those that fall within the Supreme Court's recent articulation of the *Menna-Blackledge* doctrine in *Class*. *Id.* at 806; *see Menna v. New York*, 423 U.S. 61, 62 (1975) (holding that an appeal claiming double jeopardy is not precluded by a guilty plea); *see Blackledge v. Perry*, 417 U.S. 21, 28–31 (1974) (holding that vindictive prosecution is a due process violation which may be appealed even after a guilty plea)

Under that doctrine, defendants can always appeal the government's abuse of its constitutional power to prosecute, and a direct appeal for those claims is not barred by a guilty plea. *Class*, 138 S.Ct. at 803–05. But those claims must stem from either (1) a challenge to the

constitutionality of the underlying criminal statute or (2) a due process violation in the government's prosecution. *Id.* Bogle's claims do not challenge the applicable underlying criminal statute, nor does he allege a due process violation during the government's prosecution. Therefore, with no claims falling within the *Menna-Blackledge* doctrine, Bogle has no constitutional claims that survive the implicit appellate waiver created by his guilty plea.

But Bogle argues his appeal about the suppression of the wiretap evidence is a *statutory*, rather than a constitutional, claim. He contends that this appeal does not turn on the "judicially fashioned exclusionary rule aimed at deterring violations of Fourth Amendment rights, but upon the provision of Title III," which governs the prohibited uses of wiretap evidence. *United States v. Giordano*, 416 U.S. 505, 524 (1974); 18 U.S.C. § 2515. While true, Bogle waived his right to appeal this statutory claim as well. Because this is not a constitutional claim, it cannot be preserved through the *Menna-Blackledge* doctrine. Further, preserving the right to appeal any non-jurisdictional pre-plea motion is difficult because a guilty plea generally waives that right unless the plea is conditional. *United States v. Bell*, 350 F.3d 534, 535–36 (6th Cir. 2003) (citing *United States v. Herrera*, 265 F.3d 349, 351 (6th Cir. 2001)). In order to retain the right to appeal a pre-plea motion, "there must be: 1) a conditional guilty plea in writing; 2) that reserves the right to appeal a specified pre-trial motion; and 3) that evidences the government's consent." *Id.* We have squarely held that "a defendant who pleaded guilty may not appeal an adverse ruling on pre-plea motion to suppress evidence 'unless he has preserved the right to do so by entering a conditional plea of guilty in compliance with' Rule 11(a)(2)." *Bell*, 350 F.3d at 535 (quoting *United States v. Herrara*, 265 F.3d 349, 351 (6th Cir. 2001)). Bogle's plea agreement does not satisfy any of the elements needed to preserve the right to appeal the district court's denial of the motion to suppress the wiretap evidence.

Bogle makes a final argument that plea agreements should be interpreted like contracts, and because his plea agreement includes a "narrow waiver" of appeal that "is only applicable to forfeiture," the general rule doesn't apply to the remainder of the agreement. Appellant Br. at 16. True, Bogle's plea, although otherwise silent on appellate waiver, states that Bogle "[w]aives all constitutional and statutory challenges (including direct appeal, collateral attack, or any other means) to the forfeiture." R.565, PID 3175-76. At best, Bogle's argument is that the inclusion of this limited waiver created an ambiguity with respect to the application of the general rule that a guilty plea without an appellate waiver prevents the defendant from appealing "the constitutionality of case-related government conduct that takes place before the plea is entered." *Class*, 138 S.Ct. at 805. But any such contractual ambiguity was resolved when the district court asked Bogle if he understood that he was "giving up [his] right to appeal anything that has occurred in [his] case before [he] came to court" and Bogle confirmed that he understood.[1] R.680, PageID 3923. Regardless of the appeal waiver as to forfeiture, Bogle did not enter a conditional plea reserving the right to challenge the motion-to-suppress ruling, and therefore, his appeal on that issue cannot proceed.

Because Bogle waived his right to appeal the district court's denial of the motions to suppress the evidence obtained by the government when he entered a guilty plea, we do not reach the merits of his arguments.

## III.

For the foregoing reasons, we AFFIRM the district court's denial of these motions.

---

[1] Bogle argues the court's oral statement regarding Bogle's right to appeal constituted an improper attempt by the district court to "unilaterally amend [Bogle's] plea agreement." Appellant Br. at 16 (quoting *United States v. Fleming*, 239 F.3d 761, 765 (6th Cir. 2001). This is incorrect. The district court's questioning did not conflict with or amend Bogle's plea agreement with respect to appellate waiver because the plea agreement was silent as to Bogle's appellate rights.