Filed 12/14/20; See concurring & dissenting opinion

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E071700 |
| v. | (Super.Ct.Nos. RIF1801723 & RIF1800903) |
| BRANDON LEONARD HINES, | |
| Defendant and Appellant. | OPINION |

APPEAL from the Superior Court of Riverside County. Eric G. Helgesen, Judge. Affirmed.

Richard L. Schwartzberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Seth M. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Brandon Hines of illegally possessing firearms while out on bond, as well as spousal abuse and witness intimidation, and the court sentenced him to 11 years 4 months in prison. During trial proceedings, Hines acted disruptively by making delusional and paranoid comments about the prosecutor, accusing him of being the "devil in the flesh" and having an affair with his former wife. There was also evidence Hines had suffered, and continued to suffer, from mental illness. As a result, defense counsel twice asked to have Hines evaluated psychologically.

The evaluations didn't adequately address Hines's competence to stand trial within the meaning of Penal Code section 1368. After Hines disrupted a pretrial hearing, defense counsel requested an evaluation to get Hines psychological help but declined to say he doubted Hines's competence. The court referred Hines for an evaluation under Penal Code section 4011.6 to determine whether he should be put on a Welfare and Institutions Code section 5150 involuntary 72-hour hold (section 5150 hold). The report from mental health services at the jail concluded he should not. Defense counsel objected that the evaluation wasn't sufficient to address Hines's competence, but again didn't declare he doubted Hines's competence, didn't put on evidence Hines was struggling to understand the proceedings or assist rationally in his defense, and didn't present evidence linking Hines's mental illness to his capacity to understand the proceedings or assist at trial. The trial judge declined to declare a doubt about his competence and proceeded to jury selection.

Later, in the middle of trial, defense counsel declared he had come to doubt Hines's competence. He raised the issue after a psychiatrist examined Hines and diagnosed him as having schizophrenia, bipolar disorder, anxiety, depression, and post-traumatic stress disorder. Defense counsel didn't call the psychiatrist to testify but represented he had offered the qualified opinion that Hines wasn't competent to stand trial. The qualification was he doubted his own ability to determine the issue of competence and suggested the court have him evaluated by a psychologist. Defense counsel's representations about the psychiatrist's opinion didn't link Hines's mental illness to his capacity to understand the proceedings or assist at trial and he again didn't put on evidence Hines was having difficulty assisting rationally in his defense. Rather, his competency conclusion was conclusory. The trial judge again declined to declare a doubt as to Hines's competence and refused to suspend the trial on the ground Hines had in fact been assisting in his defense. Hines then testified at some length without further incident, and the jury convicted him of illegally possessing firearms while out on bond, spousal abuse, and witness intimidation.

On appeal, Hines argues the trial judge was required to suspend the trial and hold a full competency hearing under Penal Code section 1368. Since the trial judge didn't declare a doubt about Hines's competence, we must affirm unless defense counsel presented substantial evidence to doubt Hines's competence. We conclude Hines's conduct and the information defense counsel adduced about him was worrisome but didn't constitute substantial evidence of his incompetence because defense counsel didn't

3

link his outbursts and mental illness to any limitation on his ability to understand the proceedings or provide rational assistance to defense counsel.

Hines also argues the court erred by admitting rebuttal testimony about his employees intimidating attorneys during this case and in Hines's family law proceedings with an ex-wife. We conclude the trial judge didn't abuse his discretion by admitting the testimony and, in any event, the admission was harmless.

We therefore affirm the judgment.

## I

## FACTS

A. *The Underlying Offenses*

Brandon Hines owned and operated Matrix Work Solutions (Matrix), an office furniture company in Perris, with his girlfriend, Jane Doe. He hired Doe in October 2016 to work in sales and business development. Within a month, the two began a romantic relationship which continued at the time of trial in August 2018. According to Doe, by the time of these events, she owned 10 percent of the company.

K.H. also worked at Matrix. He said he worked for Hines for more than four years and has served as a salesman. K.H. said the business had done very well, but they started losing clients toward the end when Hines began acting erratically. He said Hines's behavior "went from steady to erratic. It was day-to-day. You didn't know what was going to happen [each] day." Eventually, he said, Hines's unpredictability and erratic behavior led him to leave the company. Some of those incidents also led to the criminal

4

case against Hines.

K.H. reported Hines started mixing business posts on his social media account with personal posts of questionable content. He would regularly post business information—things like an advertisement for a high-end brand of office chairs, a solicitation for new employees, or an announcement the company was opening a new show room. But he also posted personal information about his girlfriend, which K.H. described as "very demeaning, derogatory statements," including nude photographs and descriptions of her participating in group sex for his benefit.

K.H. said he saw Hines physically abuse Doe on one occasion. He said Hines grabbed Doe around the neck with one hand and slapped her across the face with his other hand. Hines "grabbed [her] by the neck, and I mean it wasn't a full hit but it was enough of a slap that it made me uncomfortable, and I had to grab him and tell him, all right, let's go, we've got to leave now." He said the attack was unprovoked and he talked to Doe afterward and told her there are programs where she could get help. He said this event occurred around the end of 2017 or the beginning of 2018.

On February 15, 2018, K.H. and Hines had a serious confrontation which led directly to this case. Hines directed K.H. to remove spray paint Hines had used to deface his own home. K.H. said Hines had complained the police had been harassing him at night, "bugging him, banging on his door, not letting him sleep, and all this stuff." Hines decided to respond by spray painting his porch, driveway, and fence. His landlord threatened him with eviction if he didn't clean it up. Hines chose K.H. to do the job,

5

demanding that he stay late after work. K.H. said he worked late into the night but eventually told Hines he would finish the job the next morning. Hines confirmed the key points of this story, though he was less flattering of the work K.H. performed.

Hines wasn't happy when K.H. suggested leaving with the job incomplete and started yelling at him. K.H. said Hines threatened to break his legs, kill him, and paralyze him. Hines told K.H. *he* would say when K.H. could leave and pulled him into the house and locked the door. K.H. said Hines got "physical to the point of his nose touching mine and spitting in my face." K.H. became concerned when he saw a gun on a table about six feet away, and he said Hines threatened him with it, though he denied Hines had actually brandished the gun at him. K.H. said he was scared by Hines's threats and believed he would follow through. He said Hines had previously expressed anger in text messages or comments, but the physical confrontation "was a new level." Hines told K.H. to leave and never come back. Hines testified and denied many of these allegations, including that he had a gun and that he had threatened K.H. in any way.

Three Matrix employees testified they had witnessed the incident with K.H. Gerald M. worked for Hines from sometime in early 2017 until February 2018. He said he was at Hines's house on the day K.H. was cleaning graffiti and overheard the two having a heated argument that lasted about 45 minutes and ended with Hines firing K.H. He said the two didn't physically fight and he didn't hear Hines threaten K.H. in any way. He also said he never saw firearms at Hines's house. Luis V. said he began working for Hines in early 2017. He said he was on the phone with Hines during the incident with

6

K.H., which he said lasted about 20 to 30 minutes. According to Luis V., Hines told K.H. he was going to let K.H. go and K.H. resisted, but they didn't really argue.

Diego G. began working for Hines in February 2018 and worked for him for about five or six months. He said he cared a lot for Hines personally and had attended much of Hines's trial. Diego G. had gotten the Matrix logo tattooed on his right side of his head the same day as the argument between Hines and K.H. He said he came to Hines's house to deliver a chair that day. He said K.H. was using the wrong product to clean spray paint from concrete, which made the ground slippery and caused him to fall. Hines arrived later and also slipped and fell, which precipitated an argument, which Diego G. said lasted only a few minutes. He said Hines didn't threaten K.H. and said he didn't see any guns or weapons in the house. He reported that Gerald M. wasn't there during the argument but arrived later.

After the testimony of these three employees, the prosecution called two witnesses who said they had been intimidated by Matrix employees. A.R., a prosecutor who had been assigned to Hines's domestic violence case, said two men with Matrix shirts, one of whom had a Matrix tattoo on his face, followed her around the courthouse on the day of the preliminary hearing. She said she feared for her safety and asked to be taken off the case. She described how the two men looked and said they had been called as witnesses in the case but said she hadn't learned their names.

7

D.S. represented Hines's former wife in a family law case. She said several men in matching Matrix shirts were sitting behind her in the courtroom during one hearing. The judge admonished Hines and the men in the Matrix shirts for being disruptive and trying to intimidate the attorney. She said she was escorted from the courtroom by deputies and saw the men leave the courthouse with Hines. When they got to the parking lot, they all took off their Matrix shirts and left separately.

The morning after his argument with Hines, K.H. reported the incident to the police. K.H. also told them he had seen Hines remove an AR-15 from a safe at the Matrix warehouse, which contained several other firearms. He reported Hines had confided he wasn't allowed to possess firearms because there was a restraining order against him. He also told them about witnessing Hines slap Doe.

The police went to the Matrix warehouse to search the safe. Doe was there and claimed the safe was hers and Hines couldn't access it. However, she didn't know the code and didn't have a key to open it. She eventually found a note with the code in the warehouse and opened the safe. Inside, police found a pistol, two AR-15s, and ammunition. The pistol and one of the AR-15s were registered to Doe, but the other was unregistered. Doe said she had never seen the unregistered AR-15 and it belonged to Hines. The police arrested Hines.

While out on bond, Hines told K.H. he knew he had talked to the police. Hines asked him to retract his statements and say he had been lying. When K.H. refused, Hines said there would be consequences. Hines told K.H. he would "[s]end people after" him

8

and he would "do jail time." K.H. said he understood Hines to be threatening him to prevent him from testifying.

Doe testified at trial but didn't support the prosecution. When she took the stand, she mouthed "I love you" to Hines and said they were still together and very much in love. She nevertheless admitted Hines had hit her on multiple occasions. She said he had struck her in the face during what she characterized as rough sex. She also admitted he had slapped her in what she characterized as a display of dominance during an exchange with K.H., who was suggesting a four-way sexual encounter involving Doe and his own girlfriend.

### B. *Hines's Competence*

Hines on several occasions exhibited unusual and disruptive behavior during trial proceedings. During a pretrial hearing, he interrupted counsel to ask whether the district attorney is "the devil in the flesh sitting before us?" The courtroom deputy admonished Hines, and the proceedings continued.

Shortly afterward, defense counsel expressed concern about Hines's psychological condition. "I spoke to my client's mother this morning, and she informed me that my client had some difficulty over the weekend having a mental breakdown. And since then I've been in court talking to my client, and I have some serious doubts about his mental stability and his ability to act accordingly and appropriately during the course of this trial." Counsel asked the trial judge to order a psychological evaluation. Counsel explained, "in talking to him, I can just tell his eyes aren't focused on me and he's got

9

some mental issues. I don't know where this comes from. I know he's been diagnosed [under Welfare and Institutions Code section] 5150 in the past, recent past." Counsel said, "my concern is we pack a whole bunch of people in here and we're trying to select them in earnest, and my client's most likely going to have some outbreaks and taint everybody on the [jury] panel. It's just a waste of everyone's time."

The court asked Hines whether he had any concerns about his ability to control himself. Hines said yes and explained, "This man [the prosecutor] is trying to kill me. He spoke to me through my cell, and he is telling me that he is in cahoots with my ex-wife and most likely having an affair. He's the worst person on Earth and the devil in the flesh. I cannot stand to even bear him when I'm around him. I'm about to have a panic attack and a seizure just sitting here next to him and being in his presence."

The trial judge asked the courtroom deputy to call the jail where Hines was detained to find out whether someone was available to conduct a psychological evaluation. The prosecutor asked whether defense counsel was declaring a doubt as to Hines's mental competence under Penal Code section 1368, or was he "simply asking at this time to get mental help right now?" Defense counsel said he was seeking "[m]ental help right now. I would like a doctor to declare." The prosecutor asked, "So you're not declaring a doubt, but you want a doctor to help him out?" And defense counsel responded, "Right."

The trial judge noted time was of the essence. "Counsel, the other thing we need to be aware of is we're on our last day for jury trial, of course. [¶] . . . [¶] If he is found to be 1368, I will [¶] . . . [¶] [issue an] [a]utomatic stay. But if not, we're going to have to move forward [¶] . . . [¶] and get a jury sworn today. [¶] . . . [¶] And begin the process. I'm hoping we can get that done by noon." The courtroom deputy informed the judge someone at the jail's mental health services likely could see Hines "right away," so the court recessed to allow him to be evaluated.

No one expressed precisely what kind of psychological evaluation Hines should receive. As we've discussed, defense counsel and the trial judge were concerned Hines would have an outburst and taint the jury pool, and defense counsel mentioned Hines had been put on a section 5150 hold in the past. Welfare and Institutions Code section 5150, subdivision (a) provides that a person may be held for 72 hours for medical evaluation if "as a result of a mental health disorder, [the person] is a danger to others, or to himself or herself, or gravely disabled." The prosecutor brought up evaluating Hines's competence under Penal Code section 1368 by asking defense counsel whether he was declaring a doubt about Hines's competence under section 1368 subsection (b). Defense counsel said he wasn't declaring a doubt and would let a doctor make that determination. The trial judge then arranged for a psychological evaluation and noted the report he received could lead him to declare a doubt as to competence under Penal Code section 1368. However, the court didn't declare a doubt as to Hines's competence on the record at that point, as the statute requires. (Pen Code, § 1368, subd. (a) ["If . . . a doubt arises in the mind of the

11

judge as to the mental competence of the defendant, he or she shall state that doubt in the record"].) Nor did the court otherwise state what kind of psychological evaluation he was ordering, though the minute order indicates the court ordered Hines evaluated under the provisions of Penal Code section 4011.6, which allows a judge to have a therapist evaluate whether a person in custody should be placed on a section 5150 hold.

At the jail, a clinical therapist evaluated Hines under Penal Code section 4011.6. She concluded he didn't qualify to be put in custody for crisis intervention because she "found he *did not* meet criteria for a [section] 4011.6. He did not present as a danger to himself or others, nor did he present as gravely disabled during the assessment." The report did not mention Penal Code section 1368 and didn't discuss whether Hines was capable of understanding the proceedings against him or capable of participating rationally in his defense.

When the court reconvened later that afternoon the trial judge said he had "received word that [Hines] was interviewed by mental health people and that he has been cleared to proceed. That's my understanding of the word that I have received." Hines responded, "I'm not cleared. I never saw a doctor, and this devil is playing games, so I'm not getting properly cleared."

After the court warned him not to interrupt proceedings in a way that could prejudice the jury against him, Hines said, "I don't want to pick a jury with this devil of a DA. I cannot stay sane or pick a jury with the devil who is sitting at this table with me because he is trying to kill me, the sun god. And I have not been medically cleared by a

12

doctor. I saw the same mental health therapist for three to five minutes who just took a few notes and then walked away. This is not fair to me. This is jeopardizing my mental health rights. And he is manipulating the courts and everything that is going on to end up . . . execut[ing] me at the end of this trial. He's been saying this to me all weekend."

Defense counsel objected to the nature of the evaluation. "I perhaps misunderstood, but I thought that he was going to be sent down and interviewed by a doctor, a psychiatrist is what we asked, for an evaluation. To see a mental health professional who is not a doctor and they only spent about three to five minutes, per my client, I don't think that's what all of this was intended to be. This is not what we envisioned in order to find out if he was competent enough to sit through this trial. So without more information, I am – I'm at a loss for why we didn't get what we all thought we were going to get."

The trial judge responded, "I think what we got, to my understanding, is a mental health evaluation, and it likely wasn't a psychiatrist who saw him. I don't think that normally is the way it is done. I think the way it was done is typically what is typically done when these situations arise." The court asked defense counsel if he was ready to proceed, and he responded, "I don't think my client is, but I'm ready to proceed." The court noted defense counsel had created a record on the issue and "any right of appeal, if it turns out there was an issue that was done improperly, has been preserved by that."

The court advised Hines against making "any outbursts" to avoid prejudicing the jury. Hines said, "[t]hey are going to be prejudiced" and that he could not "be in the courtroom with this man and select a jury that's played against me." The trial judge told Hines he could discuss with his attorney "the option of being removed from the courtroom or waiving your right to be present." Hines said, "I'm not waiving my right." He said, "I want to be seen by the psychologist doctor as soon as possible to evaluate me, not someone who is unlicensed." The court declined, indicating the therapist had "indicated that you're clear to proceed. So we will go forward at this point, and you can reserve that right." The case then proceeded to jury selection.

At the beginning of the fourth day of trial, defense counsel reported Hines had "expressed a dire emergency to be evaluated by a psychiatrist, a doctor" and said he was "in dire straits right now." Hines said, "I'm incompetent, and I would rather die than go to prison because of this liar and excuses. I would rather commit suicide, and I would rather have a psychiatrist evaluate me for competency before continuing this trial because I can't continue it much longer." Defense counsel said, Hines "said those things to me, and I have told him that we're going to go forward. But when he is back in jail, then perhaps the Court could order that he be seen by somebody." The trial judge said they would "attempt to line something up" over the next few days when court wouldn't be in session. Hines said he was "losing my mind before this trial started" and asked to expedite the evaluation "so I can be competent or incompetent before Tuesday," when court was scheduled to resume.

14

Hines, his counsel, and the trial judge then discussed his physical restraint. Hines complained the jury could see he was handcuffed to his chair. He explained, "[i]f I face the jury, they can see the chain. It's that simple. I can't turn without seeing the chain." He believed being handcuffed was "a liability," and asked if the handcuffs could be removed so he could look through his papers without having to ask his counsel to turn pages for him. The court denied his request. The prosecutor asked if he could proceed with another witness. Hines objected the prosecutor "is the devil in the flesh. [¶] . . . [¶] They stuck me to the chair and they handcuffed me to this chair. [He] is the devil in the flesh, and I'm the sun god."

On the fifth day of trial, defense counsel reported Hines had been interviewed by a psychiatrist during the break. He reported the psychiatrist had diagnosed Hines with schizophrenia, bipolar disorder, anxiety, depression, and post-traumatic stress disorder, and prescribed him medications, which Hines identified as Depakote and Zyprexa.

Defense counsel explained the psychiatrist had concluded Hines wasn't competent to stand trial but had also expressed concern he wasn't the right person to make that determination. The psychiatrist didn't appear or testify, but defense counsel represented, "He had opined that my client was not competent to be in trial at this time. I believe the phrase that he says is not competent to stand trial at this time. But the psychiatrist indicated that they weren't really competent to make that analysis as a final analysis, so they indicated that my client needed to be interviewed by a psychologist, and as far as I know that has not been done yet."

Defense counsel then formally declared a doubt as to Hines's competence to stand trial. "So given that he has seen a doctor and the doctor determined all of those things and put him on medication, I'm making a concern to the Court at this time that I would declare a doubt as to my client's competency to remain in this trial, and I would request that the proceedings be stayed pending evaluation."

The prosecutor opposed Hines's request on the ground he was malingering. The prosecutor argued Hines "started acting out in an obviously faked and malingering fashion the day we got sent here. He started making outrageous claims only when the Court was here, only on the record, about myself and his treatment." According to the prosecutor, Hines had assisted his counsel throughout the trial by reminding counsel of certain questions, expressing opinions on jurors, and reminding counsel how to pronounce certain names and words. The prosecutor argued Hines understood who the court, the prosecutor, witnesses, and his defense attorney were. Hines responded, "Your honor, he is the devil, and he is speaking telepathically. I can't handle this. I've been trying to tell him for weeks."

The trial judge denied Hines's request. The court said the issue is whether Hines is so gravely impaired he isn't able to assist his attorney. The judge concluded he was in fact assisting in his defense and so refused to declare a doubt as to his competence and suspend the proceedings and have a competency evaluation. The judge concluded, "I am not going to suspend the proceeding at this point."

Hines asked whether he was going to see a psychologist, as the psychiatrist had requested. The trial judge responded, "No, not immediately. We're going to proceed with the trial at this point." He told Hines they would take the issue up at a break in the trial proceedings."

The final two days of testimony passed without any other outbursts, and Hines testified for about two and a half hours. Before concluding, defense counsel asked the trial judge if he had "put an order in for a psychologist." The trial judge replied, "I will put an order in that [Hines] be able to see a psychologist if possible, due to the timing. [¶] . . . [¶] And if not overnight, as soon as possible."

C. *The Verdict*

The jury convicted Hines of one count of witness intimidation (Pen. Code, § 136.1, subd. (a)(1), unlabeled statutory citations refer to this code) while out on bond (§ 12022.1), two counts of making criminal threats (§ 422), three counts of unlawfully possessing a firearm (§ 29805, subd. (a)), one count of misdemeanor spousal battery (§ 243), and one count of inflicting corporal injury on a spouse (§273.5, subd.(a)).

At sentencing, defense counsel indicated he was waiting for a report about Hines's competence to stand trial, so the trial judge granted a one-week continuance. A week later, when defense counsel still had not obtained the report, the trial judge proceeded to sentence Hines. He explained if the report "comes back [and] there's a determination that [Hines] was incompetent, this whole thing gets set aside . . . . I don't see any reason why we shouldn't be proceeding with sentencing at this time." The trial judge sentenced Hines

17

to 11 years 4 months in prison.

Subsequently, a psychologist submitted a report concluding Hines was competent to stand trial, though the report did not figure in the trial judge's decision.

Hines filed a timely notice of appeal.

## II

## ANALYSIS

A. *Hines's Competence to Stand Trial*

Hines argues the judgment must be reversed because the trial judge was required to stay proceedings and order a competency hearing under section 1368 after his trial counsel raised concerns about his competence to stand trial, once before jury selection and again after several days of trial.

Hines presents two arguments for why the court was required to investigate his competence further. First, he says the court did in fact declare a doubt about Hines's competence. Second, and in the alternative, he argues the evidence he submitted was enough to create a reasonable doubt about his competence and required the trial judge to declare a doubt. If Hines were right on either point, it would follow as a matter of law that the trial court was required to pause the trial and follow additional proceedings, possibly including a full competence hearing.

The United States Supreme Court and the California Supreme Court consistently have recognized trying a criminal defendant while they are incompetent violates due process. (E.g., *Cooper v. Oklahoma* (1996) 517 U.S. 348, 354; *People v. Koontz* (2002)

18

27 Cal.4th 1041, 1063.) A defendant is incompetent to stand trial if they lack

"""sufficient present ability to consult with [their] lawyer with a reasonable degree of rational understanding . . . [or] a rational as well as factual understanding of the proceedings against [them].""" (*Cooper v. Oklahoma,* at p. 354, quoting *Dusky v. United States* (1960) 362 U.S. 402, 402.) "'Even when a defendant is competent at the commencement of [their] trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial.'" (*People v. Lightsey* (2012) 54 Cal.4th 668, 690 (*Lightsey*), quoting *Drope v. Missouri* (1975) 420 U.S. 162, 181.)

"Where the evidence raises a '*bona fide* doubt' as to a defendant's competence to stand trial, the judge on his own motion must impanel a jury and conduct a [competence] hearing." (*Pate v. Robinson* (1966) 383 U.S. 375, 385.) At this initial stage, the proper focus for the trial judge is on the evidence put forward to support finding incompetency. The question is whether the defendant has presented a reasonable basis for doubting competency, not whether all the evidence demonstrates incompetency. The United States Supreme Court made this clear in *Pate v. Robinson*, where the Supreme Court of Illinois had held the evidence Robinson presented of his incompetence wasn't sufficient to require a hearing—to create a bona fide doubt—because he had also displayed "mental alertness and understanding . . . in [his] 'colloquies' with the trial judge." (*Ibid.*) The Court rejected the state high court's reliance on countervailing evidence, holding "this reasoning offers no justification for ignoring the uncontradicted testimony of Robinson's

history of pronounced irrational behavior. While Robinson's demeanor at trial *might be relevant to the ultimate decision* as to his sanity, it *cannot be relied upon to dispense with a hearing on that very issue*." (*Id.* at pp. 385-386, italics added.) The United States Supreme Court therefore granted a writ of habeas corpus and directed Robinson be released or given a new trial complete with a new competency hearing.

Thus, in deciding whether to suspend trial and hold a full competency hearing, the trial judge must ask whether the defendant has come forward with enough evidence of incompetence to create a reasonable doubt. If the trial judge doesn't declare a doubt and hold a hearing, we review the decision for reasonableness by asking whether there was substantial evidence supporting a finding of incompetence. (*Pate v. Robinson*, *supra*, 383 U.S. at pp. 385-386.) If the defendant presented substantial evidence of incompetence, there is a *bona fide* doubt as to competence as a matter of law, and the trial judge must order (or be directed to order) a full competency hearing. If the defendant has not presented substantial evidence of incompetence, the decision of whether to order a full competency hearing lies within the discretion of the trial court (and we review the decision for abuse of discretion).

The California Supreme Court acknowledged and adopted this approach in *People v. Pennington* (1967) 66 Cal.2d 508 and *People v. Laudermilk* (1967) 67 Cal.2d 272. The Court explained in those cases that in deciding whether there's a *bona fide* doubt about competence as a matter of law, the court looks to the evidence of incompetence, not the conflicting evidence. "[O]nce the accused has come forward with *substantial evidence* of

20

incompetence to stand trial, due process *requires* that a full competence hearing be held as a matter of right. [Citation.] In that event, the trial judge has no discretion to exercise. [Citation.] As we also have noted, substantial evidence of incompetence is sufficient to require a full competence hearing *even* if the evidence is in conflict. [Citation.] We have concluded that where the substantial evidence test is satisfied and a full competence hearing is required but the trial court fails to hold one, the judgment must be reversed." (*People v. Welch* (1999) 20 Cal.4th 701, 738.)

The California Supreme Court emphasized the trial court should not weigh the evidence and reach conclusions about the criminal defendant's ultimate competence in deciding whether there's a *bona fide* doubt about competence. "[O]nce it is determined that defendant's showing was substantial, it is immaterial that the prosecution's evidence may seem more persuasive. The conflict can only be resolved upon a special trial before the judge or jury, if a jury is requested." (*People v. Pennington*, *supra*, 66 Cal.2d at p. 519, italics added.) Allowing the introduction of countervailing evidence at the preliminary stage brings the ultimate issue into play when the question is whether there's enough reason for doubt about competence to require such a hearing as a matter of law.

The trial judge may consider countervailing evidence in deciding whether to order a full hearing, but only if the evidence isn't sufficient to create a *bona fide* doubt about competence as a matter of law. In such a case, the trial judge may reasonably decline to order a full competence hearing, but still has the discretion to order a hearing after considering all the evidence. This dynamic was at play in *People v. Welch*, where our

21

Supreme Court held the "court's findings in determining that defendant was incompetent to waive counsel do not constitute substantial evidence of defendant's incompetence to stand trial, mandating a hearing under section 1368." (*People v. Welch*, *supra*, 20 Cal.4th at p. 742.) Having determined a hearing was not required as a matter of law, the Court went on to consider whether the trial court had abused its discretion. It explained, "When the evidence casting doubt on an accused's present competence is less than substantial, the following rules govern the application of section 1368. It is within the discretion of the trial judge whether to order a competence hearing. When the trial court's declaration of a doubt is discretionary, it is clear that 'more is required to raise a doubt than mere bizarre actions [citation] or bizarre statements [citation] or statements of defense counsel that defendant is incapable of cooperating in his defense [citation] or psychiatric testimony that defendant is immature, dangerous, psychopathic, or homicidal or such diagnosis with little reference to defendant's ability to assist in his own defense.'" (*Ibid.*) In the end, the Court concluded "the circumstances noted by the court—that defendant and his counsel did not agree on which defense to employ, and that defendant had a paranoid distrust of the judicial system and had stated his counsel was in league with the prosecution—while suggesting the trial court *could have* ordered a hearing on competence to stand trial, do not establish that the trial court *abused its discretion* in failing to do so." (*Ibid.*)

It's in this kind of situation that the trial judge (and our court on appeal) may look beyond the defendant's evidence to the broader record concerning competence. As the

22

California Supreme Court summarized in *People v. Mickel* (2016) 2 Cal.5th 181, the decision not to hold a competency hearing "may be disturbed upon appeal 'only where a doubt as to [mental competence] may be said to appear as a matter of law *or* where there is an abuse of discretion.'" (*Id.* at p. 195, italics added.) In *Mickel*, the defendant's evidence was insubstantial, so a hearing was not required as a matter of law. Mickel had submitted letters after trial from family members and friends which "sought leniency for defendant and described him as 'crazy' and 'very disturbed.'" (*Id.* at p. 202.) On appeal, he argued the letters were evidence of incompetence and required the trial judge to declare a doubt and hold a competency hearing at that point. The Supreme Court held the letters weren't substantial evidence of incompetence because they "did not speak to defendant's ability to understand the proceedings or assist in his defense." (*Id.* at pp. 203.) The court also rejected as insubstantial other evidence defendant had presented as supporting incompetence. (*Id.* at p. 203-204.)

Only in the absence of substantial evidence did the Court go on to consider whether the trial court had abused its discretion by denying a full competence hearing. As part of that inquiry, it considered countervailing evidence, noting defendant had "submitted well-researched legal briefs, argued motions, and cross-examined witnesses . . . [and] filed a 15-page memorandum of points and authorities in support of his request for self-representation, where he cited relevant legal authority and made logical arguments." (*People v. Mickel*, *supra*, 2 Cal.5th at p. 203.) The Court used all of the evidence to determine that the trial court hadn't abused its discretion in refusing to hold a

23

competence hearing. (*Id.* at p. 204.)

As our Supreme Court has recognized, the Legislature enacted a statutory scheme whose purpose is to "essentially parallel the state and federal constitutional directives." (*Lightsey*, *supra*, 54 Cal.4th at p. 691.) It directs "[a] person shall not be tried or adjudged to punishment . . . while that person is mentally incompetent" and defines a person as mentally incompetent "if, as a result of mental health disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner." (§ 1367, subd. (a).)

The statutory scheme also sets out the process trial judges must follow when they come to doubt a defendant's competence to stand trial. "If, during the pendency of an action and prior to judgment, . . . a doubt arises in the mind of the judge as to the mental competence of the defendant, he or she shall state that doubt in the record and inquire of the attorney for the defendant whether, in the opinion of the attorney, the defendant is mentally competent. If the defendant is not represented by counsel, the court shall appoint counsel. At the request of the defendant or his or her counsel or upon its own motion, the court shall recess the proceedings for as long as may be reasonably necessary to permit counsel to confer with the defendant and to form an opinion as to the mental competence of the defendant at that point in time." (§ 1368, subd. (a).) After that, the trial judge then asks for defense counsel's opinion. "If counsel informs the court that he or she believes the defendant is or may be mentally incompetent, the court shall order that the question of the defendant's mental competence is to be determined in a hearing which is

24

held pursuant to Sections 1368.1 and 1369. If counsel informs the court that he or she believes the defendant is mentally competent, the court may nevertheless order a hearing." (§ 1368, subd. (b).)

As we've noted, Hines argues, in the alternative, that the trial judge in fact declared a doubt about his competence and that the evidence he submitted was substantial and therefore required the trial judge to declare a doubt. However, Hines did not argue that even if the evidence didn't require the trial judge to declare a doubt, he abused his discretion by failing to order a full competence hearing. That means our review is limited to answering whether the trial court in fact declared a doubt or was required by the Hines's evidence to declare a doubt as to competence, both circumstances that would have triggered additional obligations under the statute.

On the first question, the trial judge twice declined to declare a doubt about Hines's competence. Though defense counsel and the judge expressed themselves imprecisely at the pretrial hearing when they first discussed the need for a psychological evaluation, both were focused then on the risk Hines would disrupt proceedings and prejudice the jury against him, not on his ability to understand the proceedings or assist his defense. It was the prosecutor who raised section 1368 by asking defense counsel if he was declaring a doubt about Hines's competence. Defense counsel said he wasn't but commented he would prefer to leave that determination to a doctor. The trial judge then ordered an evaluation without specifying its nature orally but commented it could turn out to create a doubt about his competency and require a stay and a full section 1368

25

hearing. This comment strongly indicates the trial judge didn't have a doubt about Hines's competence when he ordered the evaluation, as does the fact that he didn't state that he had a doubt on the record, as the statute requires.[1] (§ 1368, subd. (a).) As it turns out, the report didn't raise a doubt in the trial judge's mind, and neither did any of the other evidence counsel had presented. The second time defense counsel raised the issue and declared he doubted Hines's competence, the judge explicitly declined to declare a doubt. All of these facts mean the question we face in reviewing the judgement is whether the trial judge *should have had* a doubt about Hines's competence to stand trial.

"If a defendant presents substantial evidence of his lack of competence and is unable to assist counsel in the conduct of a defense in a rational manner during the legal proceedings, the court *must* stop the proceedings and order a hearing on the competence issue. [Citations.] In this context, substantial evidence means evidence that *raises a reasonable doubt* about the defendant's ability to stand trial." (*People v. Ramos* (2004) 34 Cal.4th 494, 507, italics added.) "A trial court reversibly errs if it fails to hold a competency hearing when one is required under the substantial evidence test." (*Mickel, supra*, 2 Cal.5th at p. 195, quoting *Lightsey, supra*, 54 Cal.4th at p. 691.) Accordingly,

---

[1] Because the record is unclear, one could interpret the court as *implicitly* declaring a doubt about competence and ordering a psychological evaluation to allow defense counsel to inquire. (§ 1368, subd. (a).) If that's what happened, the psychological evaluation was inadequate, and the trial judge mistakenly truncated the inquiry. However, we think the better supported view is that the trial judge never had a doubt about competence. In any event, it's not our role to rely on *implicit* findings to reverse a judgment that otherwise appears to be supported. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140 ["'All intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown'"].)

"[t]he failure to declare a doubt and conduct a hearing when there is substantial evidence of incompetence . . . requires reversal of the judgment of conviction." (*People v. Rogers* (2006) 39 Cal.4th 826, 847.)

"Evidence of incompetence may emanate from several sources, including the defendant's demeanor, irrational behavior, and prior mental evaluations." (*People v. Rogers*, *supra*, 39 Cal.4th at p. 847.) "[T]he evidence must bear on the defendant's competency to stand trial, rather than simply establish the existence of a mental illness that could conceivably affect his ability to understand the proceedings or assist counsel." (*People v. Ghobrial* (2018) 5 Cal.5th 250, 270.) For that reason, "to be entitled to a competency hearing, 'a defendant must exhibit more than bizarre . . . behavior, strange words, or a preexisting psychiatric condition that has little bearing on the question of whether the defendant can assist his defense counsel.'" (*People v. Lewis* (2008) 43 Cal.4th 415, 524, overruled on other grounds by *People v. Black* (2014) 58 Cal.4th 912, 919.) In addition, defense counsel's declaration of doubt about the defendant's competence supports holding an incompetency hearing but isn't sufficient to require one. (*People v. Sattiewhite* (2014) 59 Cal.4th 446, 465; see also *People v. Mai* (2013) 57 Cal.4th 986, 1033.)

Hines argues there was enough support of his incompetence that the court was required to declare a doubt and hold a section 1368 hearing. He identifies as support: (i) his courtroom behavior, (ii) trial counsel's expression of doubt about his competence at the beginning of trial, (iii) his mother's statement that he'd suffered a mental

breakdown the weekend before the trial began, (iv) his history of mental illness, including the fact that he'd previously been placed on a section 5150 hold, (v) trial counsel's midtrial formal declaration of doubt about his competence to stand trial, and (vi) a psychiatrist's opinion that he wasn't competent to stand trial and should be evaluated further to determine his competence.

As we've discussed, defense counsel first raised Hines's competence, albeit imperfectly, just before the court began empaneling the jury. This prompted the court to have Hines evaluated immediately. At the jail, a clinical therapist interviewed Hines under the provisions of section 4011.6, which allows a judge to order a therapist to determine whether a person in custody should be placed on a 72-hour section 5150 hold. According to the clinical therapist who examined Hines, he didn't qualify to be put on a medical hold because he didn't present as a danger to himself or others or as gravely disabled. That's the standard for psychiatric detention but it doesn't help answer whether Hines could assist his attorney by, for example, attending to the testimony of witnesses under direct examination of the prosecutor and helping his attorney identify untruths or errors to address on cross-examination.

The trial judge understood the report to show Hines could proceed to trial. He said he had "received word that [Hines] was interviewed by mental health people and that he has been cleared to proceed. That's my understanding of the word that I have received." Hines and his defense counsel objected that his evaluation didn't address his competence to stand trial. The trial judge rejected these objections and accepted the report as

28

confirmation that there was no need to have a competency hearing. The court asked defense counsel if he was ready to proceed, and he responded, "I don't think my client is, but I'm ready to proceed."

This record indicates the trial judge based his determination that there wasn't a sufficient basis to doubt Hines's competence to stand trial on a therapist's report that was irrelevant to the question of competence. However, since "we are concerned with the correctness of the superior court's determination, not the correctness of its reasoning," the trial judge's error in reasoning doesn't determine whether we should affirm or reverse. (*People v. Perkins* (2016) 244 Cal.App.4th 129, 139.) Instead, we must ask whether the other information the trial judge had at that point compelled a competency hearing on its own.

We think the representations about Hines's mental health problems and his seemingly delusional outbursts are enough to raise concern, but conclude they don't, on their own, constitute substantial evidence compelling a competency hearing under section 1368. The California Supreme Court has noted bizarre outbursts are not sufficient to require a competency hearing. (E.g., *People v. Mai*, *supra*, 57 Cal.4th at p. 1033 ["disruptive conduct and courtroom outbursts by the defendant do not necessarily demonstrate a present inability to understand the proceedings or assist in the defense"]; *Mickel*, *supra*, 2 Cal.5th at p. 202 ["Defendant's trial demeanor is relevant to, but not dispositive of, the question whether the trial court should have suspended proceedings under section 1368"].) The Supreme Court has also held to be insufficient nonspecific

29

evidence of past mental illness even if it might *conceivably* compromise a defendant's ability to assist in their defense. (*Mickel*, at p. 203 [family's letters about defendant's mental illness at best "reflect generalized concerns that defendant suffered from depression or a psychosis, but they do not show that defendant was, as a result of his mental illness, unable to understand the nature and purpose of the criminal proceedings against him or conduct his defense"].)

At the pretrial stage of this case, we don't have much more than these two considerations. Counsel represented Hines had a history of serious mental illness, and his family were concerned he had suffered a very recent "breakdown." But the details of Hines's mental illness were unclear. Counsel presented no information about the nature of his past diagnoses or his recent breakdown. Hines's comments in court gave some flavor to his problems. He appeared paranoid and potentially delusional, but defense counsel did nothing to link Hines's condition with problems understanding the proceedings or assisting him at trial. What these observations called for were elaboration by counsel regarding Hines's precise condition and its consequences and descriptions of difficulties counsel was experiencing in working with Hines. Counsel attempted to get information to help him with the former by requesting a psychological evaluation but failed to obtain relevant information. As a result, defense counsel failed to present substantial evidence that Hines wasn't competent to assist in his defense.

Later, during trial, the jail had Hines evaluated by a psychiatrist. Based on this evaluation, defense counsel for the first time informed the court, "I would declare a doubt

30

as to my client's competency to remain in this trial, and I would request that the proceedings be stayed pending evaluation." Defense counsel represented Hines had been interviewed at length by a psychiatrist who had diagnosed him with schizophrenia, bipolar disorder, anxiety, depression, and post-traumatic stress disorder, and prescribed him Depakote and Zyprexa. The psychiatrist didn't testify, but defense counsel represented he offered the opinion that Hines wasn't competent to stand trial. However, defense counsel noted the psychiatrist said he wasn't qualified to make that determination, and recommended a psychologist examine him for that purpose.

The trial judge again declined to declare a doubt as to Hines's competence to stand trial, this time on the basis that he appeared to be assisting in his defense. The People and my colleague's concurring opinion defend the judgment on this basis. The People point out Hines reminded defense counsel he had been placed on a section 5150 hold, told the trial judge the jury was "going to be prejudiced" against him but declined to waive his right to be present at trial, and asked the trial judge to be released from restraints during the trial because he thought it would bias the jurors against him and impeded his ability to view materials with his attorney. While this evidence certainly could support finding Hines competent, the initial question the trial judge was required to ask—and the question we ask on appeal—is whether there was substantial evidence of his *incompetence*. If so, the trial judge was required to inquire further into his competence. The People and the concurrence flip the analysis, a position the United States Supreme Court specifically rejected long ago in *Pate v. Robinson*, *supra*, 383 U.S. 375.

31

The presence of contrary evidence therefore would have no bearing on the trial judge's duty if there was substantial evidence of incompetence. "'Once such substantial evidence appears, a doubt as to the sanity of the accused exists, no matter how persuasive other evidence—testimony of prosecution witnesses or the court's own observations of the accused—may be to the contrary. . . . [W]hen defendant has come forward with substantial evidence of present mental incompetence, he is entitled to a section 1368 hearing as a matter of right . . . The judge then has no discretion to exercise.'" (*People v. Laudermilk*, *supra*, 67 Cal.2d at p. 283, quoting *People v. Pennington*, *supra*, 66 Cal.2d at p. 518.) "[O]nce it is determined that defendant's showing was substantial, it is immaterial that the prosecution's evidence may seem more persuasive. The conflict can only be resolved upon a special trial before the judge or jury, if a jury is requested." (*Pennington*, at p. 519.)

This principle is of long standing and, contrary to the position taken in the concurrence, our Supreme Court hasn't retreated from it. Indeed, the Court restated and relied on the principle just two years ago in *People v. Rodas* (2018) 6 Cal.5th 219. Quoting *Pennington*, the *Rodas* Court said a defendant's substantial evidence of incompetence requires declaring a doubt under Section 1368 "no matter how persuasive other evidence." (*Rodas*, *supra*, at p. 231.) The *Rodas* decision turned on the point. Though there was substantial evidence of incompetence, the trial court had relied on a brief colloquy where the defendant seemed competent as a basis for declining to hold a competence hearing. Our Supreme Court concluded again that a defendant's in-court

behavior cannot override substantial evidence of incompetence. (*Id*. at p. 234.) "When faced with conflicting evidence regarding competence, the trial court's role under Penal Code section 1368 is only to decide whether the evidence of incompetence is substantial, not to resolve the conflict." (*Ibid*.; see also *People v. Jones* (1991) 53 Cal.3d 1115, 1153 [holding if a defendant presents substantial evidence of incompetency, the court must declare a doubt "even if the court's own observations lead it to believe the defendant is competent"].) As a result, we decline to look to the other evidence supporting a finding of competence.

The concurring opinion relies on countervailing evidence of competence as a basis for concluding there wasn't substantial evidence of incompetence and purports to find case law doing the same. We disagree with that analysis and believe it likely to lead trial courts into the very kind of error rejected in *Pate* and *Rodas*. The cases the concurrence cites look to countervailing evidence of competence as a reason for refusing to find the trial courts abused their discretion in failing to order a competence hearing despite the fact that defendant's evidence didn't establish reasonable doubt as a matter of law. (E.g., *Mickel*, *supra*, 2 Cal.5th at p. 195 [decision not to hold a competence hearing may be disturbed "where a doubt as to [mental competence] may be said to appear *as a matter of law or where there is an abuse of discretion*."] (Italics added.) None of them holds countervailing evidence of competence can override substantial evidence of incompetence submitted by the defendant. When a defendant has presented substantial evidence of incompetence, there's reason for doubt and further inquiry; any

33

countervailing evidence would come into play at that further inquiry.

It is true we could look to such evidence if we were called upon to decide whether the trial judge—though not required as a matter of law to order a full competence hearing—abused its discretion by failing to do so. Since Hines doesn't raise that argument, we conclude the evidence isn't relevant to the issues on appeal.

Ultimately, the problem for Hines is that even the psychiatrist's opinion and his counsel's declaration of doubt as to his competence were not enough to require a competency trial. The flaw is the same for both; neither the psychiatrist nor the attorney explained with particularity why they thought Hines's condition limited his ability to understand the proceedings or provide rational assistance to defense counsel. The psychiatrist provided definitive statements about the nature of Hines's mental illness and even prescribed him medications. These views were relevant to the question of competence. However, as we've recognized above, the critical question is not whether a defendant has a mental illness that *may* impair his ability to assist in his defense, but whether the evidence supports a reasonable doubt about their ability to understand the proceedings and participate rationally in their defense. (See *People v. Rodas*, *supra*, 6 Cal.5th at p. 233 ["The facts made known to the court raised a reasonable doubt as to whether defendant was able to communicate rationally with his attorney and thus 'to assist counsel in the conduct of a defense in a rational manner'"].)

We credit defense counsel's representations about the psychiatrist's opinions. However, the psychiatrist didn't draw the connection between Hines's mental illness and

34

his lack of competence. Instead, he expressed doubt about his qualifications to make the connection. Defense counsel similarly failed to provide any details about his own difficulties working with Hines. Though he was in the best position to make that connection, he relied entirely on the opinion of the psychiatrist and simply declared a doubt as to Hines's competence. (Compare *People v. Laudermilk*, *supra*, 67 Cal.2d at p. 238 [crediting trial attorney's representations regarding his difficulty working with his client as supporting a section 1368 hearing].) We therefore conclude defense counsel did not present substantial evidence of incompetence.

To be clear, we don't treat as dispositive the psychiatrist's comment that he wasn't "qualified" to make the final call on competency, nor treat it as an admission he wasn't a "qualified mental health expert." A qualified mental health expert is someone, like a psychiatrist or psychologist, who is trained and experienced in diagnosing and treating mental health conditions. If the attorney had represented that the psychiatrist would testify Hines was suffering from delusions so significant that he no longer understood the role of the district attorney, the judge, and the jury, or that he had lost the capacity to communicate effectively with counsel, we would not discount his opinion because he said he wasn't "qualified" to make the final competency determination. Indeed, such evidence would have constituted substantial evidence of incompetence. (See *People v. Rodas*, *supra*, 6 Cal.5th at p. 233 [holding evidence that defendant's mental illness had worsened and "his communications to his attorney were incoherent" constituted substantial evidence of incompetence].) The problem for Hines was that the psychiatrist

was not able to make such a representation or otherwise tie Hines's mental illness to a problem with his competency to stand trial.

B. *Admission of Rebuttal Testimony*

Hines presented the testimony of three Matrix employees—Gerald M., Diego G. and Luis V.—to counter the evidence that he made criminal threats against K.H. The prosecution called as rebuttal witnesses two attorneys who had previously worked against Hines's interest, one in criminal court and another in family court. Both told the jury how Matrix employees had tried to intimidate them in court proceedings. Their testimony appeared to describe two of the three employees who testified for Hines.

Hines argues the court should have barred their testimony as irrelevant and as inadmissible character and propensity evidence. Hines objected to the testimony of the family law attorney, but didn't object to the testimony of the prosecutor, so he argues he received ineffective assistance of counsel.

"'Rebuttal evidence is relevant and admissible if it tends to disprove a fact of consequence on which the defendant has introduced evidence.'" (*People v. Landry* (2016) 2 Cal.5th 52, 117, quoting *People v. Valdez* (2012) 55 Cal.4th 82, 169.) That includes testimony offered to impeach the credibility of defense witnesses by demonstrating their "character for honesty or veracity or their opposites" or the "existence or nonexistence of bias, interest, or other motive." (Evid. Code, § 780, subds. (e) & (f).) The trial judge has broad discretion to determine the admissibility of rebuttal evidence and we may not disturb the exercise of this discretion absent palpable abuse.

(*Landry*, at p. 117.)

The attorneys' testimony impeached the credibility of at least two of Hines's employee-witnesses, and evidence bearing on a witness's credibility is relevant. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9.) "Misconduct involving moral turpitude may suggest a willingness to lie" (*People v. Wheeler* (1992) 4 Cal.4th 284, 295) and includes "'conduct involving violence, menace, or threat.'" (*People v. Williams* (1999) 72 Cal.App.4th 1460, 1464.) The conduct need not relate to a prior felony conviction to be admissible. (*Wheeler*, at p. 296.)

The attorneys' testimony accused the employees of threatening conduct designed to advance Hines's legal interests. The jury could reasonably have considered the fact that those witnesses had practiced intimidation in other cases as reason for thinking they would lie on the witness stand to help Hines avoid punishment for his criminal conduct. The same evidence supports finding the witnesses have a bias or interest in favor of Hines. The trial judge did not abuse his discretion by allowing this testimony.

Even if the trial judge should have excluded the testimony, reversal is not required because any error was harmless. The case came down to the relative credibility of K.H. and Hines. While the testimony of the Matrix employees broadly supported Hines's testimony that he hadn't threatened K.H., their testimony was weak because they contradicted each other except on the one point that was most clearly important to Hines—the absence of threats. One witness said the two engaged in a heated 45-minute argument. Another said the first witness wasn't present for the incident and said the

37

argument wasn't heated and lasted only about 5 minutes. A third (telephonic) witness said the discussion lasted 20 to 30 minutes. In view of the contradictory nature of their testimony, we think the evidence of Hines's guilt was so overwhelming that there's no reasonable probability he would have received a more favorable result if the trial judge had excluded the testimony. (*People v. Watson* (1956) 46 Cal.2d 818, 836; *People v. Crew* (2003) 31 Cal.4th 822, 854.)

## III

## DISPOSITION

We affirm the judgment.

CERTIFIED FOR PUBLICATION

SLOUGH
J.

I concur:

RAPHAEL
J.

[*People. v. Hines*, E071700]

CODRINGTON, J., concurring and dissenting.

I concur in the judgment, the majority's analysis of the rebuttal evidence, and almost all of the majority's analysis of the section 1368 issue. I write separately to explain my view that, contrary to the majority opinion, we can—and should—consider evidence of defendant's competence exhibited during the trial when determining whether there was substantial evidence of his incompetence requiring a section 1368 competency hearing.

In my view, defendant's trial conduct at times indicated he was competent to stand trial in that he understood "the nature of the criminal proceedings" and could "assist counsel in the conduct of a defense in a rational manner." (Pen. Code, § 1367, subd. (a).) Defendant reminded trial counsel that he had been placed on a 5150 hold. In response to the trial court's admonition not to make outbursts so as to not prejudice the jury, defendant told the trial court that the jury was "going to be prejudiced" against him and that he could not "pick a jury" while the prosecutor was in the room. When the trial court responded that defendant could discuss the option of waiving his right to be present, defendant said he was "not waiving [his] right" to be present. During trial, defendant asked the trial judge if he could not be handcuffed during the trial because he thought it was "a liability" for the jurors to see him handcuffed to his chair, which suggests defendant understood the judge's and the jurors' role. Defendant also asked to have his handcuffs removed so that his attorney did not have to flip pages for him, which indicates

1

he was assisting his attorney during the trial. As the majority correctly notes, defense counsel never told the trial court that defendant did not understand the proceedings or could not assist counsel in his defense. (Maj. opn. *ante*, at pp. 21, 26-27.) All of this suggests that defendant understood the proceedings and could help his trial counsel during the trial.

Even though the majority opinion notes that defendant's rational behavior at trial "certainly could support finding [defendant] competent," the majority holds we cannot consider it in our evaluation of whether there was substantial evidence of defendant's incompetence under *Pate v. Robinson* (1966) 383 U.S. 375 (*Pate*). (Maj. opn. *ante*, at p. 28.) I disagree.

*Pate* held only that if there is substantial evidence of the defendant's incompetence, then a competency hearing is required even if the defendant's in-court behavior suggests that he is competent. (See *People v. Rodas* (2018) 6 Cal.5th 219, 234 [explaining the *Pate* court held "when substantial evidence of incompetence otherwise exists, a competency hearing is required even though the defendant may display 'mental alertness and understanding' in his colloquies with the trial judge."].) For instance, "[i]f there is testimony from a qualified expert that, because of a mental disorder, a defendant truly lacks the ability to cooperate with counsel, a competency hearing is required," irrespective of defendant's apparent competence exhibited at the trial. (*People v. People v. Lewis* (2008) 43 Cal.4th 415, 526, rejected on another ground in *People v. Black* (2014) 58 Cal.4th 912.) However, in the usual case (such as this one), there is no clear-

cut evidence of the defendant's incompetence, so the trial court and the reviewing court must consider all relevant indicia of the defendant's competence, whatever its source. (See *People v. Ghobrial* (2018) 5 Cal.5th 250, 270 [absent testimony from "qualified mental health expert" that the defendant is incompetent, "a court must consider the 'aggregate of th[e] indicia' of the defendant's competence"].)

Nothing in *Pate* or cases following it says we cannot consider evidence of a defendant's trial courtroom behavior that indicates he or she was competent to stand trial in deciding whether there was substantial evidence of the defendant's incompetence under section 1368. In fact, our Supreme Court has done exactly that on several occasions.

Almost 30 years ago, in *People v. Danielson* (1992) 3 Cal.4th 691, overruled on other grounds in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13, our Supreme Court discussed the defendant's trial courtroom behavior in holding that he did not present substantial evidence of his incompetence. In concluding that "no substantial evidence was raised indicating [the defendant] was unable to understand the nature of the proceedings or to cooperate with his counsel," the court observed that, "based on the observations of those persons who . . . actually witnessed his trial testimony and demeanor, the contrary appears true." (*People v. Danielson*, *supra*, at p. 727.) The *Danielson* court thus explicitly relied on "the entire record," including evidence of the defendant's competence demonstrated at trial, to support its conclusion that there was not substantial evidence that he was incompetent. (*Ibid*.)

Our Supreme Court did so again over 20 years ago in *People v. Hayes* (1999) 21 Cal.4th 1211.  In upholding the trial court's denial of the defendant's motion for a section 1368 competency hearing, the court observed:  "[A]ppellant persuaded the trial court to permit him to act as cocounsel during the penalty trial.  His presentation of that motion, the support he offered for it, and his subsequent presentation of several presentence motions and arguments in support thereof *demonstrate beyond any doubt that he was fully aware of the nature of the proceedings and able to assist counsel*.  Appellant's motions for a continuance, for new trial based on newly discovered evidence and denial of various constitutional rights, for a competency hearing, and his claim that he was unable to rationally assist defense counsel themselves reflect complete awareness of the nature of the proceedings and, on their face, completely rational legal decisionmaking."  (*Id.* at p. 1282, italics added.)  Our Supreme Court thus looked to evidence of the defendant's rational trial court behavior to decide whether he was "unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner"  (Pen. Code, § 1367, subd. (a); *ibid.*)

Our Supreme Court did so again in *People v. Koontz* (2002) 27 Cal.4th 1041, 1065.  The court held that "[t]he record simply does not show that [defendant] lacked an understanding of the nature of the proceedings or the ability to assist in his defense.  To the contrary, defendant . . . put on evidence, conducted cross-examination and testified on his own behalf," and his testimony "contained no bizarre content, as opposed to mere exaggeration or lies."  (*Ibid.*)  The *Koontz* court therefore concluded there was no

4

substantial evidence of the defendant's incompetence requiring a section 1368 competency hearing and therefore the trial court did not err in not holding one sua sponte. (*Id*. at pp. 1065, 1069.)

Similarly, in *People v. Lewis*, *supra*, 43 Cal.4th 415, our Supreme Court rejected the defendant's argument that there was substantial evidence of his incompetence and affirmed the trial court's decision not to hold a section 1368 competency hearing. (*Id*. at p. 523.) The *Lewis* court did so in part because the defendant's trial court conduct "indicated the depth of his understanding of the proceedings and his ability to assist counsel." In particular, the defendant's comments during a prosecution witness's testimony appeared to be "an effort to impeach her credibility." (*Id*. at p. 525.) And when the trial court and counsel were discussing whether to excuse the witness, the defendant suggested to his trial counsel to "'[p]ut [the witness] on recall or something'" because "'[w]e want her back in here.'" (*Id*. at p. 526.) Based on the defendant's suggestion, his attorney reserved the right to recall the witness. (*Ibid*.) The defendant's rational trial behavior reflecting his understanding of the nature of the proceedings was one of several reasons why the *Lewis* court held "[t]here was no substantial evidence of incompetence" and that the trial court "did not err in not declaring a doubt or in not conducting a competency hearing." (*Id*. at p. 526.)

So too in *People v. Rogers* (2006) 39 Cal.4th 826. In that case, our Supreme Court rejected the defendant's argument that the trial court failed "to inquire into, and to conduct a hearing regarding, his competence to stand trial and to assist counsel in his

5

defense." (*Id*. at p. 846.) The *Rogers* court held that the evidence the defendant cited to support his argument that the trial court should have held a competency hearing did not constitute substantial evidence of incompetence under section 1368. (*Id*. at p. 849.) Moreover, the court recognized that the defendant "testified coherently and articulately, and there was nothing in his testimony that would have caused the trial court to question whether he was unable to understand the proceedings or cooperate with counsel." (*Ibid*.) The *Rogers* court thus held that, "[c]onsidering all the evidence before the trial court," including the defendant's "coherent[] and articulate[]" testimony, "there was no substantial indication of incompetence requiring the trial court to declare a doubt and conduct a competence hearing." (*Ibid*.; see *People v. Panah* (2005) 35 Cal.4th 395, 433 [finding no substantial evidence of incompetence in part because of "the trial court's own observation that defendant had repeatedly assisted in his defense, including bringing and arguing his first *Marsden* motion. (See also *People v. Hayes* (1999) 21 Cal.4th 1211, 1282, [a defendant's participation in his trial 'demonstrate[s] beyond any doubt that he was fully aware of the nature of the proceedings and able to assist counsel']"].)

*People v. Mickel* (2016) 2 Cal.5th 181 also shows that we may consider evidence of the defendant's competence exhibited in the trial court in deciding whether there was substantial evidence of the defendant's incompetence. There, our Supreme Court held the trial court did not err in failing to sua sponte hold a section 1368 competency hearing despite the defendant's "bizarre behavior and his unconventional trial demeanor" because "[t]he record of trial proceedings shows that defendant understood the nature and purpose

6

of the proceedings and was capable of assisting in his own defense." (*Id*. at p. 203.) The *Mickel* court noted the defendant "submitted well-researched legal briefs, argued motions, and cross-examined witnesses[,] . . . represented that he had 'undertaken extensive and diligent study to become more familiar with the criminal trial process[,]' . . . [and] filed a 15-page memorandum of points and authorities in support of his request for self-representation, where he cited relevant legal authority and made logical arguments." (*Ibid*.) Relying on this and other evidence, the *Mickel* court concluded there was no substantial evidence of the defendant's incompetence, so the trial court was not required to hold a section 1368 competency hearing. (*Id*. at p. 204; see *People v. Davis* (1995) 10 Cal.4th 463, 528 [finding no substantial evidence of incompetence and noting the "[d]efendant's refusal to sit at the counsel table did not evince incompetence or lack of ability to participate meaningfully in the proceedings" because "[h]is explanation for avoiding the counsel table was rational and coherent"].)

Just two years ago, our Supreme court considered similar behavior by the defendant in *People v. Woodruff* (2018) 5 Cal.5th 697 when rejecting the defendant's argument that the trial court erred by failing to sua sponte hold a section 1368 competency hearing. (*Id*. at p. 723.) The court found that the "defendant's comments . . . support[ed] a finding that he understood the proceedings and could communicate how he wanted to try his case." (*Id*. at pp. 722-723.) Among other things, the defendant asked the court, "'You, the Judge, is going to be doing this trial, too, right?' After the judge's affirmative response, he asked further, 'They not gonna change you,

7

right?'  When the court responded affirmatively again, the defendant stated, 'Well, I'm satisfied.'" (*Id*. at p. 723.)  Our Supreme Court concluded that the "[d]efendant's questions and comments showed that he could discuss his confusion with the court and express his concerns, and thus showed that he was able '"to conduct his own defense in a rational manner."' [Citation.]" (*Ibid*.)  Moreover, the court observed that the defendant "answered questions coherently." (*Ibid*.)  "[O]n cross-examination, [the defendant] was able to adhere to his version of events despite persistent questioning from the prosecutor,"  "appropriately state[d] when he did not understand a question," and "'testified, in a completely rational manner, in his own defense.'" (*Ibid*.)  Our Supreme Court thus again relied on the defendant's rational trial behavior in holding there was no substantial evidence of the defendant's incompetence and that the trial court did not err in failing to hold a competency hearing sua sponte.  (*Id*. at pp. 721, 723.)

In short, California Supreme Court precedent unambiguously confirms that it is appropriate to consider evidence of defendant's competence he exhibited at trial in determining whether there was substantial evidence of his incompetence requiring a section 1368 competency hearing.  This makes sense because the standard under section 1368 is whether there was substantial evidence that the defendant "is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner." (Pen. Code, § 1367, subd. (a).)  Evidence that the defendant understands the proceedings and can rationally assist his counsel is therefore

directly relevant to whether there is substantial evidence that the defendant is incompetent.

As our Supreme Court has explained, "[i]n assessing whether the trial court erred in failing to suspend proceedings, we consider *all* evidence related to defendant's *competence*" of which the trial court was aware.  (*People v. Mickel*, *supra*, 2 Cal.5th at p. 202, italics added; accord, *People v. Rogers*, *supra*, 39 Cal.4th at p. 849 ["Considering all the evidence before the trial court," including the defendant's rational testimony, in finding "no substantial indication of incompetence"].)  This necessarily includes the defendant's "demeanor at trial," whether rational or irrational.  (*Drope v. Missouri* (1975) 420 U.S. 162, 180.)

Other Courts of Appeal also have relied on the defendant's rational trial behavior in concluding that the trial court was not required to hold a section 1368 competency hearing.  For instance, in *People v. Avila* (2004) 117 Cal.App.4th 771, the court observed: "Defendant's demeanor and conduct during trial and the surrounding circumstances all support the trial court's conclusion regarding defendant's mental condition.  Defendant was both 'present' and 'competent' within the meaning of the law. . . .  [T]he record shows that defendant was alert and coherent during the proceedings.  Defendant responded appropriately to all of the judge's questions."  (*Id*. at p. 779.)

The court in *People v. Garcia* (2008) 159 Cal.App.4th 163, likewise pointed to the defendant's rational participation in his defense in concluding there was no substantial evidence that he was incompetent.  In that case, the defendant "identified the charges

9

against him in his opening statement. His motions were partially successful. At one point, he told the court that he was presenting an argument because if he did not make a record he would not be able to raise the issue on appeal. He corrected the court on a sentencing calculation. He requested a 'jury with twelve.' His cross-examinations demonstrated a full understanding of the allegations against him." (*Ibid*; see *People v. Boyd* (1971) 16 Cal.App.3d 901, 907 ["[T]he record reveals nothing that could be considered substantial evidence of mental incompetency. On the contrary, the record indicates that appellant fully understood the proceedings"]; *People v. Cooks* (1983) 141 Cal.App.3d 224, 324 ["The record shows, however, that there was no real doubt about Simon's competency. As the trial court remarked, Simon's testimony was lucid and articulate"].)

The federal courts are likewise bound by *Pate*'s rule that "[a] criminal defendant's due process right to a fair trial is violated by a court's failure to hold a proper competency hearing where there is substantial evidence of a defendant's incompetency." (*United States v. Abdulmutallab* (6th Cir. 2014) 739 F.3d 891, 899; see 18 U.S.C. § 4241, subd. (a) [district court must hold competency hearing "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense"].) Thus, "[b]oth federal due process and [California] state law require a trial judge to suspend trial proceedings and conduct a competency hearing whenever the court is

10

presented with substantial evidence of incompetence, that is, evidence that raises a reasonable or bona fide doubt concerning the defendant's competence to stand trial." (*People v. Rogers*, *supra*, 39 Cal.4th at p. 847.)  For that reason, it is appropriate to consider federal cases here for their persuasive authority.  (See *People v. Linton* (2013) 56 Cal.4th 1146, 1182 fn. 8 ["We are not bound, of course, by decisions of the lower federal courts, even on federal questions, but they may be considered for their persuasive weight"].)

When deciding whether there was substantial evidence of the defendant's incompetence, federal appellate courts, like California courts, routinely consider evidence of the defendant's rational trial behavior that suggests the defendant was competent.  (See e.g., *Douglas v. Woodford* (9th Cir. 2003) 316 F.3d 1079, 1094 [defendant's "coherent, responsive, and . . . articulate" responses to trial judge was "the most convincing" and "strong" evidence of his competence to stand trial].)

For instance, in *United States v. Abdulmutallab*, *supra*, 739 F.3d 891, the Sixth Circuit held there was no substantial evidence of the defendant's incompetence in part because he "was an active participant in the proceedings, filing and arguing motions, and assisting [his trial counsel] in preparing his defense."  (*Id*. at p. 901.)  The defendant also "directly and articulately addressed the district judge on multiple occasions and demonstrated his ability to make comprehensible legal arguments and his clear understanding of the nature of the proceedings."  (*Id*. at pp. 900-901.)  Relying on the fact that the defendant "exhibited an ability to adequately conduct his defense," (*id*. at p. 901.)

11

the Sixth Circuit held the district court "district court did not err in not holding a competency hearing." (*Id*. at p. 900.)

The Ninth Circuit relied on similar evidence in *Douglas v. Woodford*, *supra*, 316 F.3d 1079. In finding that there was no substantial evidence of the defendant's incompetence, the Ninth Circuit relied in part on the fact that the defendant "was coherent, responsive and quite articulate throughout the proceeding," which was the "most convincing" and "strong evidence" that the defendant "was competent at the time of his trial." (*Id*. at p. 1094.) Because the record "ma[de] it quite clear that [the defendant] understood the charges against him," the Ninth Circuit heldt he district court "correctly concluded that [the defendant] did not raise a 'real and substantial' question about his competence to stand trial." (*Ibid*.)

The Fourth Circuit has explicitly relied on evidence that the defendant "'acted in a manner exhibiting competence'" during trial court proceedings in upholding a district court's refusal or failure to hold a competency hearing because "[t]he record reflect[ed] that [the defendant] was competent." (*Beck v. Angelone* (4th Cir. 2001) 261 F.3d 377, 388, 391; see *id.* at p. 391, fn. 13 [finding there was "overwhelming evidence that [the defendant] was competent"].) The First, Third, Fifth, Tenth, and D.C. Circuits have done the same. (See also *United States v. Brown* (1st Cir. 2012) 669 F.3d 10, 18 ["To be sure, Edward made comments that on their face could lead one to question whether he even understood what was happening. Yet, he also made statements that evidenced a rational and factual understanding of the legal system," footnotes omitted]; *Jermyn v. Horn* (3d

12

Cir. 2001) 266 F.3d 257, 294-295 [noting the defendant "appeared before the trial court several times prior to the trial and seemed fully capable of understanding the proceedings, communicating with counsel and assisting in his defense" and his testimony "supports the conclusion that he appeared capable of understanding the proceedings and assisting counsel with his defense"]; *United States v. Flores-Martinez* (5th Cir. 2012) 677 F.3d 699, 708 [district court did not err in failing to sua sponte holding competency hearing because the defendant's "conduct . . . was not divorced from reality" given that "[e]ach time he was questioned by the district court, his responses demonstrated that he fully understood the nature of the proceeding"]; *McGregor v. Gibson* (10th Cir. 2000) 219 F.3d 1245, 1252 [noting the defendant "testif[ied] during an *in camera* suppression hearing, during which [he] was able to understand the questions posed and respond accordingly"]; *United States v. Perez* (D.C. Cir. 2010) 603 F.3d 44, 48 [the defendant's "understanding of the proceedings against him and his ability to assist counsel before and during trial[] preclude reasonable cause to believe [he] was incompetent to stand trial"].)

In my view, this authority from our Supreme Court, other Courts of Appeal, and the federal appellate courts makes clear that we may consider evidence of defendant's rational trial conduct in deciding whether there was substantial evidence of defendant's incompetence under section 1368. Of course, the trial court cannot rely on such evidence to "dispense with" a competency hearing if there is substantial evidence that raises a doubt about the defendant's competence. (*Pate*, *supra*, 383 U.S. at p. 386.) But I am not aware of—and the majority does not cite—any authority that holds we cannot consider

13

evidence of the defendant's rational trial behavior in our evaluation of whether there was substantial evidence of the defendant's incompetence.

As Our Supreme Court has directed us, we must "consider *all* evidence related to defendant's *competence*" of which the trial court was aware "[i]n assessing whether the trial court erred in failing to suspend proceedings" and hold a competency hearing. (*People v. Mickel*, *supra*, 2 Cal.5th at p. 202, italics added.)  And as the United States Supreme Court has directed us, we may consider evidence of the defendant's "demeanor at trial" in deciding whether there was substantial evidence of the defendant's incompetence.  (*Drope v. Missouri*, *supra*, 420 U.S. at p. 180.)  The California and federal authority outlined above shows that the defendant's rational behavior at trial is part of his or her "demeanor at trial," which we should consider in deciding whether there was substantial evidence of the defendant's incompetence.

I therefore respectfully disagree with the majority that, in deciding whether the there is substantial evidence of the defendant's incompetence under section 1368, we may not consider the multiple instances of defendant's trial behavior which the majority acknowledges indicates he was competent to stand trial.  As discussed above, our Supreme Court's precedent establishes that we should do so, as does persuasive authority from other Courts of Appeal and the federal appellate courts.  I concur with the majority's well-reasoned opinion in all other respects.


CODRINGTON _____
                                    J.


14